UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RIC-MAN CONSTRUCTION, INC.,
a Michigan Corporation,

-and-                                                    Case No. _____

MANCINI ENTERPRISES, LLC,                                Hon. _____
a Michigan Limited Liability Company,

-and-                                                    **Demand For Jury Trial**

CRSM 7800 LLC,
a Michigan Limited Liability Company,

-and-

STEVEN MANCINI,
a Michigan resident,

       *Plaintiffs,*
v.

RICHARD MANCINI CONSTRUCTION, INC.,
a Florida Corporation,

-and-

RICHARD MANCINI,
a Florida Resident.

       *Defendants.*

---

## COMPLAINT

Plaintiffs Ric-Man Construction, Inc.; Mancini Enterprises, LLC; CRSM

7800, LLC; and Steven Mancini state the following for their Complaint against Richard Mancini Construction, Inc. and Richard Mancini.

## INTRODUCTION

This action arises from the repeated and deliberate abuse of trust—both family trust and corporate trust—by Defendant Richard Mancini.  For years, Richard used his position as a manager of family-affiliated businesses to obtain millions of dollars in loans and payments, on the express understanding that those funds would be used to support his company's legitimate business operations and repaid in due course. Rather than live up to his obligations, Richard has failed to repay the loans, failed to deliver over $800,000 in equipment as promised to settle a portion of the indebtedness, submitted fraudulent expenses and invoices for payment, and diverted funds for personal use.

## PARTIES

1.      Plaintiff Ric-Man Construction, Inc. ("RCI") is a Michigan corporation with its principal offices in Macomb County, Michigan.

2.      Mancini Enterprises, LLC ("Mancini Enterprises") is a Michigan limited liability company with its principal offices in Macomb County, Michigan.

3.      The sole member of Mancini Enterprises is the Steven M. Mancini Living Trust, dated July 29, 1993, as amended, which is administered in Macomb County, Michigan.

4.      Plaintiff Steven Mancini is the sole trustee of the Steven M. Mancini Living Trust.

5.      CRSM 7800 LLC ("CRSM 7800") is a Michigan limited liability company.

6.      CRSM 7800 has two members:  The Steven M. Mancini Living Trust, dated July 29, 1979, as amended, and Steven M. Mancini 2021 Children's Trust Agreement No. 1, dated April 7, 2021.

7.      Steven Mancini is the sole trustee of the Steven M. Mancini Living Trust, dated July 29, 1979, as amended.

8.      Lisa Mancini (wife of Steven Mancini) is the sole trustee of the Steven M. Mancini 2021 Children's Trust Agreement No. 1, dated April 7, 2021.

9.      Richard Mancini is the son of Lisa Mancini and Steven Mancini.

10.     Until his removal on February 28, 2023, Defendant Richard Mancini was a manager of CRSM 7800.

11.     Steven Mancini is a resident of Macomb County, Michigan.

12.     Lisa Mancini is a resident of Macomb County, Michigan.

13.     Defendant Richard Mancini is a Florida resident.

14.     Defendant Richard Mancini Construction, Inc. ("RMC") is a corporation organized under the laws of the State of Florida.

15.     On information and belief, Defendant Richard Mancini is the sole

- 3 -

shareholder of RMC.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over the instant action on the basis of diversity pursuant to 28 U.S.C. § 1332(a) because (1) Plaintiffs Ric-Man Construction, Inc.; Mancini Enterprises, LLC; CRSM 7800, LLC; and Steven Mancini are citizens of the State of Michigan; (2) Defendants Richard Mancini Construction, Inc. and Richard Mancini are citizens of the State of Florida; and (3) the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

17.     This Court has personal jurisdiction over Defendant Richard Mancini under Michigan's long-arm statute, Mich. Comp. Laws § 600.705, because he transacted business in the State of Michigan and in this judicial district, he committed tortious acts in the State of Michigan and in this judicial district, and he caused injury to persons and property in the State of Michigan and in this judicial district through acts both within and outside the State and in this judicial district.

18.     Defendant Richard Mancini purposefully availed himself of the privilege of conducting activities within Michigan, the causes of action stated herein arise out of or relate to his Michigan contacts, and the exercise of jurisdiction comports with due process.

19.     This Court has personal jurisdiction over Defendant Richard Mancini Construction, Inc. ("RMC") pursuant to Mich. Comp. Laws § 600.715 because it

transacted business within the State of Michigan and this judicial district; engaged in a continuing course of conduct within the State of Michigan and this judicial district and outside of the State of Michigan and this judicial district, causing harm within the State of Michigan and resulting in an action for tort; and entered into contracts with Michigan entities.

20.     Defendant RMC purposefully availed itself of the privilege of conducting activities within Michigan, the causes of action stated herein arise out of or relate to its Michigan contacts, and the exercise of jurisdiction comports with due process.

21.     At all times relevant to this Complaint, Richard Mancini maintained an office in Macomb County, Michigan, where he engaged in work for RMC and Mancini Enterprises.

22.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) and (b) because Plaintiffs are residents of this judicial district and/or because a substantial part of the events or omissions giving rise to this dispute occurred in this district.

COMMON ALLEGATIONS

23.     Plaintiff RCI is engaged in heavy civil underground and tunnel construction.

24.     Mancini Enterprises is a management company that supports various

Mancini-affiliated entities.

25. In 2018, Richard Mancini formed Defendant RMC, a Florida-based construction company through which he also performed property-management services.

26. From December 2018 through September 2024, Richard Mancini, directly and through RMC, performed services for Mancini Enterprises, acting as its "President."

27. In this capacity, he had access to Mancini Enterprises' bank accounts, as well as the bank accounts of several affiliated companies, including CRSM 7800.

28. Beginning in 2019 and continuing until September 2024, RCI provided RMC and Richard with startup and operating capital. RCI advanced RMC funds to purchase equipment, pay overhead, vendors, and employees, and otherwise support RMC's operations.

29. Consistent with the understanding of the parties, RCI and RMC accounted for the financial support provided to RMC as intercompany loans.

30. RMC has failed to repay these funds and has defaulted on these loans, which total more than $10.5 million.

31. Separately, Richard performed property-management services for Mancini Enterprises.  Those services were performed almost exclusively through RMC, and Richard directed that Mancini Enterprises pay RMC for those services.

32.     Richard also caused Mancini Enterprises to pay more than $130,000 toward his personal credit card expenses.

33.     Additionally, Richard directed that more than $150,000 in Mancini Enterprises funds be transferred to RMC without authorization and in excess of any amounts either he or RMC was legitimately entitled to receive.

34.     In recognition of the excessive payments that he caused Mancini Enterprises to make to himself and to RMC, Richard and Mancini Enterprises recorded the above transfers as loans payable by Richard and RMC to Mancini Enterprises.

35.     As Manager of CRSM 7800, and without authorization, Richard also caused or directed the transfer of more than $11,000 from CRSM 7800 to RMC.

36.     Richard also often abused his position of trust and charged expenses to credit cards that were paid by RCI and recorded as loans to RMC.

37.     On or about December 28, 2023, Steven informed Richard that RCI would not advance funds to pay Richard's personal expenses.  Instead, all advances would be limited to those required for legitimate business expenses.

38.     This directive was unambiguous, immediately effective, and well understood by Richard.

39.     In 2024, Richard demanded that Mancini Enterprises purchase for him a new $150,000 Porsche and a $3 million house in Miami.

- 7 -

40. Steven refused and directed that any payments to RMC would have to be pursuant to valid invoices.

41. To evade RCI's refusal to pay his personal expenses, Richard repeatedly misrepresented advances requested for RMC or himself as business expenses when, in fact, many were used to pay his personal expenses, including personal credit card expenses and the purchase of a snowmobile.

42. He accomplished his scheme by abusing his positions of trust and access to company bank accounts, directing subordinates to make unauthorized transfers, and submitting inflated and fraudulent invoices.

43. These acts constituted intentional fraud, misappropriation of funds, and conversion of corporate property for personal use.

44. A specific list of such transactions is summarized and attached as Exhibit A, which is incorporated by reference.

45. When Richard was confronted with his unlawful and tortious conduct, he responded with comments such as that he was "taking care of me first."

46. By 2023, RMC's debt to RCI, both from loans related to RMC's operating expenses and from funds converted by Richard and RMC under false pretenses, had grown to more than $8 million.  To reduce that, RCI and RMC agreed that RCI would forgive $4 million in RMC debt.  In exchange, RMC agreed to transfer to RCI title to some of the heavy equipment it had purchased with the

advances given by RCI.

47.     Richard agreed to this arrangement in front of witnesses.

48.     While Richard and RMC physically transferred some equipment from Florida to Michigan under this arrangement, Richard later refused to complete the transfers of title and then demanded return of the transferred assets.

49.     On information and belief, Richard has caused RMC to sell some or all of the equipment he agreed to transfer to RCI as part of a campaign to liquidate RMC's assets and convert them to cash for his personal use. Rather than honoring his agreement to repay his debt to Plaintiffs, Richard has responded with intimidation and threats—including an extortionate demand that his parents provide him with a tax-free gift totaling tens of millions of dollars and transfer ownership of RCI and an affiliated entity to him for $1—and has compounded this misconduct by filing frivolous litigation in the State of Florida.

50.     In 2023 and again in 2024, the right to collect portions of the outstanding RMC loan balance, totaling $8 million, were transferred from RCI to Steven Mancini, with the remaining debt still held by RCI.

## Count I
Breach of Loan Agreement between RMC and RCI

51.     Plaintiffs incorporate all preceding allegations by reference.

52.     As set forth herein, Plaintiff RCI and Defendants agreed that RCI would provide substantial financial support to RMC, including startup and operating

capital, and that RMC would repay the funds.

53.    RCI and Steven Mancini made repeated demands for repayment of the outstanding loan balance, but those demands have been rebuffed.

54.    RMC has materially breached the loan agreement and caused substantial damages to RCI and to Steven Mancini.

55.    Rather than honoring RMC's repayment obligations, Richard siphoned funds from RMC for his personal use, rendered it insolvent, commingled corporate and personal funds, used RMC as an instrumentality for his personal enrichment, and abused the corporate form to perpetrate a fraud on RCI—thereby justifying the piercing of RMC's corporate veil and the imposition of personal liability on Richard for RMC's debts.

FOR ALL THE ABOVE REASONS, Plaintiffs RCI and Steven Mancini request that this Court enter judgment in their favor against Defendants, jointly and severally, for breach of contract, in an amount to be determined at trial but in excess of $75,000, together with interest, costs, and any other relief that the Court deems just and proper.

## Count II
Breach of Partial Settlement Agreement between RCI and RMC

56.    Plaintiffs incorporate all preceding allegations by reference.

57.    In or around 2023, RCI, Richard Mancini, and RMC entered into an agreement to settle a portion of RMC's debt owed to RCI.

58.     Under the terms of the agreement, RCI agreed to forgive approximately $4 million of RMC's debt in exchange for the transfer of equipment purchased with funds loaned from RCI to RMC.

59.     Richard Mancini agreed to this arrangement and initially permitted the transfer of certain equipment from Florida to RCI in Michigan.

60.     But Richard later refused to complete the equipment transfer, demanded return of equipment already transferred, and retained or sold the equipment for his own benefit.

61.     By failing to deliver the agreed-upon consideration (the equipment), Defendants materially breached the partial settlement agreement.

62.     As a result of Defendants' breach, Plaintiffs RCI and Steven Mancini were deprived of the agreed-upon consideration for the debt forgiveness and suffered financial harm.

63.     Rather than honoring RMC's repayment obligations, Richard siphoned funds from RMC for his personal use, rendered it insolvent, commingled corporate and personal funds, used RMC as an instrumentality for his personal enrichment, and abused the corporate form to perpetrate a fraud on RCI—thereby justifying the piercing of RMC's corporate veil and the imposition of personal liability on Richard for RMC's debts.

FOR ALL THE ABOVE REASONS, Plaintiffs RCI and Steven Mancini

request that this Court enter judgment in their favor against Defendants, jointly and severally, for breach of the partial settlement agreement, in an amount to be determined at trial, together with costs, interest, and any other relief this Court deems just and appropriate.  Plaintiffs also request equitable relief in the form of an order compelling Richard Mancini and RMC to specifically perform the agreed-upon transfer of RMC equipment to RCI.

Count III
Fraud
(Against Richard Mancini)

64.     Plaintiffs incorporate all preceding allegations by reference.

65.     Following a directive from Steven Mancini on December 28, 2023, Defendant Richard Mancini was informed that neither he nor RMC would receive any further funds from RCI except funds for valid business expenses.

66.     Richard was aware that any funds transferred after that date were conditioned on truthful representations that the money was needed to pay only valid business expenses, such as RMC supplier invoices, employee payroll, equipment costs, and overhead.

67.     After being expressly prohibited from using company funds for personal purposes, Defendant Richard Mancini induced RCI to advance substantial sums by representing that the funds were needed to pay suppliers or other legitimate business expenses.

68.    Richard knew at the time of each request that he intended to divert large portions of the advanced funds to personal uses, in direct contravention of the stated purpose of the transfers.

69.    Exhibit A to this Complaint (which is incorporated by reference) is a table of every transfer of funds that RCI made to RMC based on Richard's misrepresentation that the funds would be used to satisfy only legitimate business expenses.

70.    Following receipt of the funds transfers itemized in the table at Exhibit A, Richard repeatedly caused RMC to pay personal expenses out of funds he obtained through his fraudulent misrepresentations.

71.    Exhibit B (also incorporated by reference) is a table showing each of the payments that Richard caused RMC to make for his personal expenses from funds that he obtained from RCI based on the above fraudulent misrepresentations.

72.    As a direct and proximate result of Richard Mancini's fraudulent conduct, Plaintiff RCI has sustained damages, including but not limited to the value of misappropriated funds, investigative and accounting expenses, increased tax exposure, and other losses.

FOR ALL THE ABOVE REASONS, Plaintiff RCI requests that this Court enter judgment in its favor against Defendant Richard Mancini for fraud and false pretenses, award exemplary damages and compensatory damages in an amount to

be determined at trial, and grant any other relief that the Court deems just and proper.

## Count IV
### Statutory and Common Law Conversion
### (Against Richard Mancini)

73.     Plaintiffs incorporate all preceding allegations by reference.

74.     Richard's concealment of material facts, coupled with affirmative misrepresentations, enabled him to obtain RCI's property by false pretenses.

75.     As set forth herein and summarized on Exhibits A and B, which are incorporated by reference, Richard Mancini unlawfully diverted and exercised dominion and control over RCI's funds and converted those funds to his own use.

76.     Such conduct constitutes common law conversion and statutory conversion under MCL 600.2919a(1)(a), which permits recovery for a person damaged by another's stealing, embezzling, or converting property to their own use, and allows for treble damages, costs, and reasonable attorney fees.

77.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiff RCI has sustained damages, including the value of misappropriated funds, investigative and accounting expenses, increased tax exposure, legal fees, and other losses.

FOR ALL THE ABOVE REASONS, Plaintiff RCI requests that this Court enter judgment in its favor against Defendant Richard Mancini for common law and

- 14 -

statutory conversion under MCL 600.2919a, including treble damages, costs, and attorney fees, and for any other relief that the Court deems just and proper.

Count V<br>Breach of Loan Agreement between RMC and Mancini Enterprises

78. Plaintiffs incorporate all preceding allegations by reference.

79. At all relevant times, Richard Mancini held a position of trust and control over the financial affairs of Mancini Enterprises, serving as an officer, manager, and fiduciary agent.

80. As a result of this relationship of trust, Richard Mancini had access to and control over the funds belonging to Mancini Enterprises.

81. In the course of that relationship, Richard Mancini caused in excess of $155,350 belonging to Mancini Enterprises to be transferred to RMC, an entity he owned and controlled.

82. In the course of that relationship, Richard Mancini caused in excess of $134,500 belonging to Mancini Enterprises to be transferred to him for the payment of his personal credit cards.

83. When Richard Mancini caused the above funds to be transferred, he did so pursuant to an agreement, express, implied, or through a course of dealing, that these funds would be treated as loans.

84. To date, RMC has failed to repay the transferred funds, despite demands for repayment.

85.     Defendants' failure to repay the loaned funds constitutes a material breach of the parties' loan agreement.

86.     As a direct and proximate result of this breach, Mancini Enterprises has suffered damages, including, but not limited to, the unrepaid principal and tax liabilities.

87.     Rather than honoring RMC's repayment obligations, Richard siphoned funds from RMC for his personal use, rendered it insolvent, commingled corporate and personal funds, used RMC as an instrumentality for his personal enrichment, and abused the corporate form to perpetrate a fraud on Mancini Enterprises—thereby justifying piercing RMC's corporate veil and the imposition of personal liability on Richard for RMC's debts.

FOR ALL THE ABOVE REASONS, Plaintiff Mancini Enterprises requests that this Court enter judgment in its favor against RMC and Richard Mancini for breach of contract, in an amount to be determined at trial but in excess of $75,000, together with interest, costs, and any other relief that the Court deems just and proper.

Count VI
Common Law and Statutory Conversion
(Against Richard Mancini by CRSM 7800)

88.     Plaintiffs incorporate all preceding allegations by reference.

89.     At all relevant times, Richard Mancini held a position of trust and

control over the financial affairs CRSM 7800, serving as an officer, manager, or fiduciary agent.

90. As a result of this relationship of trust, Richard Mancini had access to and control over the funds belonging to CRSM 7800.

91. In the course of that relationship, Richard Mancini caused funds belonging to the CRSM 7800 to be transferred to RMC, an entity he owned and controlled and thereby unlawfully exercised control and dominion over the funds.

92. On April 1, 2019, Richard Mancini transferred, or caused to be transferred, $113.05 from CRSM 7800 to RMC.

93. These funds were not transferred pursuant to any legitimate business obligation, nor were they authorized by CRSM 7800 or its ownership.

94. Richard Mancini dishonestly disposed of or converted the funds by directing or facilitating the transfers for his own use or for the benefit of entities he controlled, including RMC.

95. At the time of conversion, Richard Mancini intended to defraud or cheat CRSM 7800 by misappropriating funds that were held in trust and using them for unauthorized or undisclosed purposes.

96. On April 1, 2019, Richard Mancini transferred, or caused to be transferred, $1,421.85 from CRSM 7800 to RMC.

97. These funds were not transferred pursuant to any legitimate business

obligation, nor were they authorized by CRSM 7800 or its ownership.

98.    Richard Mancini dishonestly disposed of or converted the funds by directing or facilitating the transfers for his own use or for the benefit of entities he controlled, including RMC.

99.    At the time of conversion, Richard Mancini intended to defraud or cheat CRSM 7800 by misappropriating funds that were held in trust and using them for unauthorized or undisclosed purposes.

100.    On April 29, 2019, Richard Mancini transferred, or caused to be transferred, $5,000.00 from CRSM 7800 to RMC.

101.    These funds were not transferred pursuant to any legitimate business obligation, nor were they authorized by CRSM 7800 or its ownership.

102.    Richard Mancini dishonestly disposed of or converted the funds by directing or facilitating the transfers for his own use or for the benefit of entities he controlled, including RMC.

103.    At the time of conversion, Richard Mancini intended to defraud or cheat CRSM 7800 by misappropriating funds that were held in trust and using them for unauthorized or undisclosed purposes.

104.    On August 29, 2019, Richard Mancini transferred, or caused to be transferred, $5,000.00 from CRSM 7800 to RMC.

105.    These funds were not transferred pursuant to any legitimate business

obligation, nor were they authorized by CRSM 7800 or its ownership.

106.    Richard Mancini dishonestly disposed of or converted the funds by directing or facilitating the transfers for his own use or for the benefit of entities he controlled, including RMC.

107.    At the time of conversion, Richard Mancini intended to defraud or cheat CRSM 7800 by misappropriating funds that were held in trust and using them for unauthorized or undisclosed purposes.

108.    The above transfers total $11,534.90.

109.    Although the above transfers occurred in 2019, CRSM 7800 did not discover the transfers until 2024.

110.    Richard Mancini's conduct constitutes common law and statutory conversion under MCL 600.2919a(1)(a), which permits recovery for a person damaged by another's stealing, embezzling, or converting property to their own use, and allows for treble damages, costs, and reasonable attorney fees.

111.    As a direct and proximate result of Richard Mancini's wrongful acts, Plaintiff CRSM 7800 has suffered damages, including, but not limited to, the loss of corporate assets, investigative and accounting costs, disruption of business operations, and other financial injuries.

FOR ALL THE ABOVE REASONS, Plaintiff CRSM 7800 respectfully requests that the Court enter judgment in its favor against Richard Mancini for

common law and statutory conversion, and award all available damages, including compensatory, consequential, and exemplary damages, treble damages, recovery of attorney fees and costs, interest, and any other relief that the Court deems just and proper.

Count VII
Breach of Fiduciary Duty
(Against Richard Mancini by CRSM 7800)

112.    Plaintiffs incorporate by reference all preceding allegations.

113.    At all relevant times, Defendant Richard Mancini held positions of trust, authority, and control in CRSM 7800 as a manager, exercising control over its financial affairs.

114.    By virtue of that, Richard Mancini owed a fiduciary duty to CRSM 7800 and Mancini Enterprises, Inc., including the duties of loyalty, care, good faith, full disclosure, and to act in the best interests of the companies and their stakeholders.

115.    Without proper authorization, Richard Mancini caused or directed the transfer of substantial funds from CRSM 7800 to RMC, a company under his control and ownership.

116.    These transfers were made for the personal benefit of Richard Mancini and/or used for unrelated or improper purposes, including, but not limited to, satisfying personal obligations or funding expenditures unrelated to the business or

obligations of CRSM 7800.

117.    The transfers were not supported by legitimate invoices, arm's-length agreements, or adequate consideration. They were not disclosed or approved by disinterested managers or stakeholders.

118.    Richard Mancini's conduct constitutes a willful breach of the fiduciary duties he owed to CRSM 7800 and Mancini Enterprises, Inc.

119.    As a direct and proximate result of these breaches, Plaintiff CRSM 7800 suffered damages in an amount to be proven at trial, including the loss or diversion of corporate assets.

FOR ALL THE ABOVE REASONS, Plaintiff CRSM 7800 respectfully requests that the Court enter judgment against Defendant Richard Mancini for damages caused by his breach of fiduciary duty; order disgorgement of any ill-gotten gains; impose a constructive trust over any assets wrongfully obtained; and award costs, attorneys' fees, and any other relief the Court deems just and proper.

### Count VIII
Quantum Meruit/Unjust Enrichment

120.    Plaintiffs incorporate all preceding allegations by reference.

121.    Defendants have been unjustly enriched at the expense of each Plaintiff by wrongfully obtaining and using their funds for their personal benefit, without permission, justification, or lawful basis.

As to Plaintiff RCI:

122.     Between June 2020 and September 2024, RCI conferred substantial benefits upon Defendants Richard Mancini and RMC by providing millions of dollars in capital, equipment funding, and operational support.

123.     These funds were provided to enable RMC to conduct its business operations, including the purchase of construction equipment, payment of vendors and employees, and coverage of project expenses.

124.     RCI provided these benefits with the expectation that it would be repaid in full.

125.     Defendants knowingly accepted and retained the benefits conferred, including cash, equipment, and other financial support.

126.     Despite receiving these benefits, Defendants have failed to provide repayment or equivalent consideration to Plaintiffs.

127.     The value of the benefits conferred in startup and operational funds exceeds $10.5 million, for which Defendants have provided no adequate compensation.

128.     Further, Richard Mancini unlawfully obtained substantial funds from RCI, Mancini Enterprises, and CRSM 7800 for personal use, as set forth herein.

129.     In reliance on Richard's representations that funds were needed to pay subcontractors, equipment, or payroll costs, RCI released funds to RMC on the understanding they would be used exclusively for operational expenses.

130. As alleged in detail herein and summarized in Exhibits A and B, Richard Mancini instead diverted significant portions of these funds for personal use, including, but not limited to, payments on his personal credit cards and cash withdrawals for unknown purposes.

As to Plaintiff Mancini Enterprises:

131. As alleged in detail in Count V, Defendants have also failed to repay funds loaned by Mancini Enterprises.

132. Defendants knowingly accepted and retained the benefits conferred.

133. Despite receiving these benefits, Defendants have failed to provide repayment or equivalent consideration to Plaintiffs.

As to Plaintiff CRSM 7800:

134. As alleged in detail in Count VII, Richard Mancini also diverted funds belonging to CRSM 7800 while serving in a position of trust and control over that entity.

135. These funds were transferred without the knowledge or consent of other stakeholders and were not used for legitimate business purposes, but rather redirected for the benefit of Richard personally or to entities under his control, such as RMC.

136. Defendant provided no equivalent value or consideration to Plaintiff in exchange for these funds, and it would be inequitable for Defendant to retain the

benefit conferred.

137.     It would be inequitable for Defendants to retain the value of these misappropriated or improperly obtained funds without compensating Plaintiffs.

FOR ALL THE ABOVE REASONS, Plaintiff RCI respectfully requests that the Court award restitution in the amount of the funds unjustly retained by Richard Mancini, including improperly diverted transfers and unpaid loans; Plaintiff Mancini Enterprises requests that the Court award restitution in the amount of the unpaid loans; Plaintiff CRSM 7800 requests restitution of all misappropriated funds taken or directed by Richard Mancini; Plaintiffs also request that the Court impose a constructive trust over any traceable assets or funds in Richard Mancini's possession that came from these unjustly retained amounts; and that all Plaintiffs be awarded any further relief the Court deems just and proper.

## JURY DEMAND

Plaintiffs request trial by jury of all matters so triable.

June 12, 2025                              Respectfully submitted,

**BLEVINS SANBORN JEZDIMIR ZACK PLC**

*/s/Don W. Blevins*
Don W. Blevins (P64146)
dblevins@bsjzlaw.com
Don W. Blevins III (P81773)
dwblevins@bsjzlaw.com
300 Park Street, Suite 285
Birmingham, MI 48009
(313) 338.9500