## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

RIC-MAN CONSTRUCTION, INC.,
MANCINI ENTERPRISES, LLC, CRSM
7800 LLC, and STEVEN MANCINI,

   *Plaintiffs,*

*v.*

RICHARD MANCINI CONSTRUCTION,
INC. and RICHARD MANCINI,

   *Defendants.*

Case No. 25-cv-11774

Hon. Mark A. Goldsmith

Mag. Judge Kimberly G. Altman

## PLAINTIFFS' RESPONSE TO DEFENDANTS'
## <u>MOTION TO DISMISS OR STAY</u>

## Table of Contents

Index of Authorities ...................................................................................... iii

Statement of Issue Presented ........................................................................ v

Controlling or Most Appropriate Authority ................................................. vi

Introduction ................................................................................................... 1

Background .................................................................................................... 2

Argument ....................................................................................................... 4

   I.   Legal Standard for *Colorado River* Abstention ................................... 4

   II.   The Florida and Michigan Suits Are Not Parallel ............................. 6

     A.   The parties are not substantially similar. ..................................... 7

     B.   The claims arise from different facts, duties, and injuries. ............. 8

     C.   The claims differ in legal theory and requested relief. .................. 9

     D.   The Florida case cannot resolve the claims here. ........................ 11

   III.   The *Colorado River* Factors Confirm Abstention Is Improper ..................... 12

     A.   The state court has not assumed jurisdiction over any property. .............. 13

     B.   The federal forum is not less convenient to the parties. ........................... 14

     C.   Abstention would not avoid piecemeal litigation. .................................... 15

     D.   Neither case is meaningfully further along than the other. ........................ 17

     E.   Michigan—not Florida—law governs the claims. .................................... 18

     F.   The Florida action cannot protect Plaintiffs' rights. .................................. 19

     G.   Concurrent jurisdiction carries little weight. ........................................... 21

     H.   The balance of the *Colorado River* factors does not support abstention. ....... 21

   IV.   If abstention were warranted, a stay—not dismissal—would be the proper course. .............................................................................................. 22

Conclusion .................................................................................................... 22

### <u>Index of Authorities</u>

## Cases

*Ajuba Int'l, LLC v. Saharia*, 871 F.Supp.2d 671 (E.D. Mich. 2012)..................... 6, 7, 12

*Baskin v. Bath Twp. Bd. of Zoning Appeals*, 15 F.3d 569 (6th Cir. 1994) ......... 10, 11, 20

*Bates v. Ban Buren Twp.*, 122 F. App'x 803 (6th Cir. 2004); ......................... 13, 15, 22

*Brunswick Corp. v. McNabola*, No. 16 CV 11414, 2017 WL 3008279 (N.D. Ill. July 14, 2017) ...............................................................................................................5

*Chellman-Shelton v. Glenn*, 197 F. App'x 392 (6th Cir. 2006)........................... 7, 12, 17

*Clark v. Lacy*, 376 F.3d 682 (7th Cir. 2004) ...............................................................7

*CLT Logistics v. River W. Brands*, 777 F.Supp.2d 1052 (E.D. Mich. 2011) .........passim

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). 5, 6, 14, 19

*Courthouse News Serv. v. Planet*, 750 F.3d 776 (9th Cir. 2014) .......................................5

*Crawley v. Hamilton Cty. Comm's*, 744 F.2d 28 (6th Cir. 1984) .................. 6, 12, 16, 20

*Gentry v. Wayne County*, No. 10-cv-11714, 2010 WL 4822749 (E.D. Mich. Nov. 22, 2010) .........................................................................................................................22

*Great Earth Companies, Inc. v. Simons*, 288 F.3d 878 (6th Cir. 2002)............................18

*Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271 (1988) ............................12

*Inrecon, LLC v. Highland Ins. Co.*, 284 F. Supp. 2d 773 (E.D. Mich. 2003) ................18

*Leatherworks P'ship v. Boccia*, 247 F. App'x 311 (6th Cir. 2007).................................15

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Co.*, 460 U.S. 1 (1983) ..................passim

*Novak v. Federspiel*, No. 21-1722, 2022 WL 3046973 (6th Cir. Aug. 2, 2022).......9, 10

*Pachal v. Bugreeff*, 495 F. Supp. 3d 963 (D. Mont. 2020)..............................................5

*PaineWebber, Inc. v. Cohen*, 276 F.3d 197 (6th Cir. 2001)...................................passim

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996) .....................................................5

*Quality Assocs., Inc. v. The Procter & Gamble Distrib. LLC*, 949 F.3d 283 (6th Cir. 2020) .......................................................................................................................16

*RGIS, LLC v. Gerdes*, No. 19-11866, 2020 WL 2043484 (E.D. Mich. Apr. 28, 2020) .......................................................................................................................7, 15

*Romine v. Compuserve Corp.*, 160 F.3d 337 (6th Cir. 1998)...................................passim

*RSM Richter, Inc. v. Behr Am., Inc.*, 729 F.3d 553 (6th Cir. 2013)................................5

*Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013).....................................................5

*Stahl York Ave. Co., LLC v. City of New York*, No. 14 CIV. 7665 ER, 2015 WL 2445071 (S.D.N.Y. May 21, 2015)......................................................................5

*Taylor v. Campanelli*, 29 F. Supp. 3d 972 (E.D. Mich. 2014) ..............................passim

*UEI, Inc. v. Quality Fabricated Metals, Inc.*, No. 1:06-cv-122, 2006 WL 1541353 (W.D. Mich. June 1, 2006) ............................................................................21

*United Am. Healthcare Corp. v. Backs*, 997 F. Supp. 2d 741 (E.D. Mich. 2014) ... 15, 16, 18, 21

*Walbridge Aldinger Co. v. Aon Risk Servs., Inc. of Pa.*, No. 06-cv-11161, 2006 WL 2376112 (E.D. Mich. Aug. 16, 2006) ..................................................11

*Warner v. Greenebaum, Doll & McDonald*, 104 F. App'x 493 (6th Cir. 2004)..............11

*Yahya Trading Corp. v. Mohamed*, --- So.3d ---, 2025 WL 2155054 (Fla. 3d DCA 2025) ....................................................................................................16

## Statutes

Mich. Comp. Laws § 600.2919....................................................................19

## Rules

Fed. R. Civ. P. 12 .....................................................................................5

Fla. R. Civ. P. 1.170..................................................................................16

## <u>STATEMENT OF ISSUE PRESENTED</u>

I.     *Colorado River* abstention is a narrow exception to a federal court's "virtually
       unflagging obligation" to hear a case. It applies when a parallel state action
       involves the same parties, facts, and claims. Here, the Florida state action
       and this federal suit involve different parties, facts, claims, and remedies.
       Should the Court abstain?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

**U.S. Supreme Court**

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983).

**Sixth Circuit**

*Crawley v. Hamilton Cty. Comm'rs*, 744 F.2d 28 (6th Cir. 1984)

*Romine v. Compuserve Corp.*, 160 F.3d 337 (6th Cir. 1998).

*PaineWebber, Inc. v. Cohen*, 276 F.3d 197 (6th Cir. 2001).

*RSM Richter, Inc. v. Behr Am., Inc.*, 729 F.3d 553 (6th Cir. 2013)

**Eastern District of Michigan**

*Taylor v. Campanelli*, 29 F. Supp. 3d 972 (E.D. Mich. 2014)

*CLT Logistics v. River W. Brands*, 777 F. Supp. 2d 1052 (E.D. Mich. 2011)

*Ajuba Int'l, LLC v. Saharia*, 871 F. Supp. 2d 671 (E.D. Mich. 2012)

## INTRODUCTION

To show why *Colorado River* abstention does not apply to this case, one could just reproduce Defendants' introduction in full: Richard Mancini filed suit in Florida state court against his father, mother, sister, and several family-run entities. The Florida complaint alleges that "when Richard protested a collusive rental arrangement between the Mancini family businesses and an irrevocable trust…the Florida defendants unlawfully terminated his employment" and that his termination "was part of a multifaceted conspiracy to exploit the Mancini family's interrelated business entities and trusts…" (ECF No. 9, PageID.51–52). None of that has anything to do with the claims brought here.

This case is about loans, invoices, and misused funds. Plaintiffs allege that Richard and his company submitted fraudulent bills, diverted advances for personal use, and defaulted on repayment—Michigan-centered conduct giving rise to Michigan-law claims. Two key parties here (RMC and CRSM 7800) are not parties in Florida; several key Florida defendants (family-trust fiduciaries) are not parties here. Different parties. Different facts. Different claims. Different remedies.

That ought to settle it. Abstention is an "extraordinary and narrow" exception to a federal court's "virtually unflagging obligation" to exercise jurisdiction. It applies only when the state and federal actions are truly parallel. These are not.

1

## BACKGROUND

Ric-Man Construction, Inc. ("Ric-Man") is a heavy underground and tunnel construction contractor wholly owned by Steven Mancini. Mancini Enterprises, LLC is a management company, whose sole member is Steven's trust. Steven is the father of Richard Mancini, who owns his own construction company, Richard Mancini Construction, Inc. ("RMC"). RMC was a subcontractor on several Ric-Man projects.

On December 6, 2024, Richard filed suit in Florida state court. (Case No. 50-2024-CA-011586, Fifteenth Judicial Circuit, Palm Beach County). He named as defendants Steven Mancini; Lisa Cavaliere Mancini (his mother), as trustee several children's trust agreements; Christina Mancini Catera (his sister), as trustee of another trust; Mancini Enterprises; Ric-Man; and Ric-Man Detroit, Inc.

The central claim in the Florida complaint is a breach-of-employment-agreement count, brought against Steven, Mancini Enterprises, Ric-Man, and Ric-Man Detroit. Richard alleges that Steven orally promised him lifetime employment in December 2016, and that his termination in the summer of 2024 breached that agreement. He seeks specific performance in the form of reinstatement, claiming there is no adequate remedy at law.

The remaining counts in the Florida Complaint concerned trust administration. Three claims were directed at individual trustees for allegedly

2

failing to provide accountings. The final count sought a declaratory judgment that Christina Catera was improperly appointed as trustee.

On January 8, 2025, the defendants began what Defendants here call their "procedural maneuvers to avoid litigating in Florida" (ECF No. 9, PageID.52), by removing the case to the Southern District of Florida. (9:25-cv-00832-AMC, Dkt. 1 (S.D. Fla.)) On February 7, 2025, Richard moved to remand, citing a lack of complete diversity. (9:25-cv-00832-AMC, Dkt. 15 (S.D. Fla.)) On February 21, 2025, the defendants responded that Christina Catera had been fraudulently joined to destroy federal jurisdiction. (9:25-cv-00832-AMC, Dkt. 21 (S.D. Fla.)) On February 28, 2025, Judge Aileen Cannon remanded the case for reasons stated on the docket. (9:25-cv-00832-AMC, Dkt. 23 (S.D. Fla.))

Back in the state court, Richard filed a First Amended Complaint on May 14, 2025. The FAC expands upon the trust-related claims to include wrongful transfers of assets, aiding and abetting by Steven, and an alleged civil conspiracy among all the defendants to enrich themselves at the trust beneficiaries' expense. It also introduces a new conversion claim against Steven and Lisa, alleging that they stole Richard's Christmas gifts over a period of twenty-five years.

Each of the Florida defendants have moved to dismiss the FAC for failure to state a claim and (except for Christina) for lack of personal jurisdiction. Those motions remain pending.

3

Meanwhile, on June 12, 2025, Ric-Man, Mancini Enterprises, Steven Mancini, and CRSM 7800 filed this action. (ECF No.1, PageID.1.) The Complaint alleges that Richard Mancini abused positions of trust to extract over $10 million in loans and payments from Ric-Man, Mancini Enterprises, and CRSM 7800. It also alleges that Richard and his company, RMC, submitted fraudulent invoices, diverted funds for personal use, and defaulted on their repayment obligations. Plaintiffs bring claims for breach of loan agreements, breach of a partial settlement agreement including the transfer of heavy equipment, fraud, statutory and common-law conversion, breach of fiduciary duty, and unjust enrichment. They also allege that, even after being directed not to use corporate funds for personal expenses, Richard continued requesting advances under false pretenses and used those funds to pay credit card bills and to purchase a snowmobile. The Complaint includes exhibits itemizing nearly $2.3 million in misused advances. Several plaintiffs seek to pierce RMC's corporate veil and hold Richard personally liable.

Defendants moved to Dismiss or Stay on *Colorado River* abstention grounds. (ECF No. 9, PageID.44.)

<u>**ARGUMENT**</u>

## I.     Legal Standard for *Colorado River* Abstention

Defendants move to dismiss this case, or alternatively to stay it, under the *Colorado River* abstention doctrine. *Colorado River Water Conservation Dist. v. United*

4

*States*, 424 U.S. 800 (1976).[1] Federal courts have a "strict duty to exercise the jurisdiction that is conferred upon them by Congress," and abstention is an "'extraordinary and narrow exception' to that duty." *RSM Richter, Inc. v. Behr Am., Inc.*, 729 F.3d 553, 557 (6th Cir. 2013) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996); *Colorado River*, 424 U.S. at 813). "Only the clearest of justifications will support abstention." *RSM Richter*, 729 F.3d at 557 (cleaned up).

Generally, "the mere pendency of a state-court case concerning the same subject matter as a federal case is not reason enough to abstain." *RSM Richter*, 729 F.3d at 557; *see Sprint Commc'ns., Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) ("Parallel state-court proceedings do not detract" from a federal court's "virtually unflagging" obligation to "hear and decide a case."). Yet, in *Colorado River*, the Supreme Court recognized that, in certain "exceptional circumstances," a federal court may

---

[1] Defendants style their motion as one brought under Fed. R. Civ. P. 12(b). The courts are split on which (if any) subpart governs motions raising *Colorado River* abstention. *Compare, e.g.*, *Stahl York Ave. Co., LLC v. City of New York*, No. 14 CIV. 7665 ER, 2015 WL 2445071, at *7 (S.D.N.Y. May 21, 2015) (applying Rule 12(b)(1)) with *Brunswick Corp. v. McNabola*, No. 16 CV 11414, 2017 WL 3008279, at *7 (N.D. Ill. July 14, 2017) ("As a discretionary and prudential doctrine, it is not an issue of subject-matter jurisdiction that must be decided at the outset of a case."). Some courts avoid choosing altogether. *See Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 (9th Cir. 2014) ("We have not squarely held whether abstention is properly raised under Rule 12(b)(6), Rule 12(b)(1), both, or neither."). Others, when pressed, have invoked Rule 12(b)(6). *See Pachal v. Bugreeff*, 495 F. Supp. 3d 963, 965 (D. Mont. 2020) ("Although a motion to dismiss under Rule 12(b)(6) is an imperfect vehicle for considering these arguments, courts routinely address…*Colorado River* using the framework provided by that rule.").

abstain in favor of a parallel state proceeding, based on "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." 424 U.S. at 817. Still, abstaining remains "the exception, not the rule.'" *Id.* at 813.

　　To determine whether the "exceptional circumstances" exist, the Sixth Circuit applies a two-step inquiry. The court first asks whether the state and federal proceedings are truly parallel. *See Crawley v. Hamilton Cty. Comm's*, 744 F.2d 28, 31 (6th Cir. 1984). If they are, the court then balances the factors identified in *Colorado River* and later Supreme Court decisions. *Ajuba Int'l, LLC v. Saharia*, 871 F.Supp.2d 671, 693 (E.D. Mich. 2012) (cleaned up); *see PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 206–07 (6th Cir. 2001) (citation omitted). The court also considers whether the state proceeding can provide complete relief. *See Taylor v. Campanelli*, 29 F. Supp. 3d 972, 978 (E.D. Mich. 2014).

## II.　　The Florida and Michigan Suits Are Not Parallel

　　*Colorado River* abstention begins (and often ends) with parallelism. The threshold question is whether "the concurrent state and federal actions are actually parallel." *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998) (citation omitted). Exact parallelism is not required, but the suits must be "substantially similar." *Id.* at 340 (citations omitted). Cases are "substantially similar 'where (1) the parties are substantially similar, and (2) [Plaintiffs'] claims against [Defendant]

6

are predicated on the same allegations as to the same material facts." *Taylor*, 29 F. Supp.3d at 977 (citation omitted). "Any doubt regarding the parallel nature of the [state court] suit should be resolved in favor of exercising jurisdiction." *Chellman-Shelton v. Glenn*, 197 F. App'x 392, 395 (6th Cir. 2006) (cleaned up); *Ajuba Intern.*, 871 F. Supp. 2d at 695.

### A. The parties are not substantially similar.

Defendants invoke the Seventh Circuit's test that "[p]arties with 'nearly identical' interests are considered 'substantially the same' for *Colorado River* purposes." (ECF No. 9, PageID.58 (quoting *Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004)). To be clear, the Sixth Circuit has never expressly adopted that test. *But see RGIS, LLC v. Gerdes*, No. 19-11866, 2020 WL 2043484, at *6 (E.D. Mich. Apr. 28, 2020) (applying *Clark v. Lacy*); *Taylor*, 29 F. Supp. 3d at 977 (same). But even under *Clark*, the parties are not "substantially the same."

Several key players in the Florida case—the family-trust fiduciaries—are not parties here. Likewise, the key corporate party here, RMC, is not a party in Florida. Neither is CRSM 7800. Party alignment also differs: several defendants in Florida on the employment claim here appear as plaintiffs, seeking to recover for fraud, conversion, and unpaid loans unrelated to any employment issue.

Those omissions and realignments matter. Nonparties cannot be bound by, or obtain relief in, the other forum. And far from having "nearly identical"

7

interests, trust fiduciaries defending administration decisions and an employer facing employment claims do not share legal interests with corporate lenders asserting commercial torts and contract breaches. At a minimum, these mismatches create the "substantial doubt" that defeats abstention. *See Moses H. Cone Mem. Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 28 (1983).

### B. The claims arise from different facts, duties, and injuries.

Defendants' argument fares no better on the second prong. Parallelism also requires that the claims in both cases rest on "the same allegations as to the same material facts." *Taylor*, 29 F. Supp. 3d at 977. That showing is impossible here—and Defendants' own description of the Florida case underscores the mismatch.

Defendants describe the Florida suit as involving trust-related claims against Richard's mother and sister, an allegedly unlawful employment termination, and a "multifaceted conspiracy to exploit the Mancini family's interrelated business entities and trusts." (ECF No. 9, PageID.51−52.) They emphasize that "[t]he FAC brings eleven claims against Lisa" (PageID.54), who is not a party here, and highlight the employment-related claim as "[m]ost important[]." (*Id.*) This reads like an entirely different case from the one brought here—because it is.

Yet Defendants claim that each of the claims in Plaintiffs' federal action "arose from" Richard's employment with Ric-Man or his work with Mancini Enterprises. (Id. at PageID.55.) That is not correct.

8

Counts I–II arise from contractual obligations created by the parties' agreements concerning loans and the partial settlement of RMC's debt to Ric-Man. Counts III–IV arise from general legal and statutory duties not to obtain property through fraud or conversion—duties that exist independent of any employment relationship. Count VI arises from Richard's role at CRSM 7800, a separate entity, and his misappropriation of company funds. Only Count V touches Mancini Enterprises, and that alleges Richard transferred funds from its bank account to himself—an act grounded in his access and misuse, not any job function.

These are not employment claims, trust-mismanagement claims, or conspiracy claims. They are commercial and tort claims arising from loans, fraud, and conversion. The cases rest on different facts, duties, and alleged harms.

### C. The claims differ in legal theory and requested relief.

Even if there were factual overlap, the cases still would not be parallel. The Sixth Circuit has made clear that abstention is improper where the actions are grounded in different legal theories or seek different relief.

Consider the court's decision in *Novak v. Federspiel*, No. 21-1722, 2022 WL 3046973 (6th Cir. Aug. 2, 2022). There, Saginaw County deputies seized 14 firearms from a cabin following a domestic dispute, retaining them for "safe keeping." The alleged owners filed a claim-and-delivery action in Michigan state

9

court seeking their return. After the state court dismissed that case, and while their appeal was pending, the plaintiffs filed a § 1983 action in federal court. The federal action included the same state-law claim-and-delivery claim but added constitutional claims. The district court *sua sponte* stayed the federal case under *Colorado River*.

The Sixth Circuit reversed. Although both cases arose from the same facts and involved substantially similar parties, the court held the differing claims and forms of relief rendered them not parallel. The state action sought only return of the firearms; the federal action also sought damages, meaning "even if the firearms [were] returned, [the plaintiffs] may not be made whole by the state court's ruling." *Id.* at *3. Thus, because the state case could not serve as "an adequate vehicle for the complete and prompt resolution of the issues between the parties," abstention was improper. *Id.* at *2–3 (quoting *Moses H. Cone*, 460 U.S. at 28).

Likewise, in *Baskin v. Bath Twp. Bd. of Zoning Appeals*, 15 F.3d 569 (6th Cir. 1994), the dispute arose from Baskin's application to construct broadcast towers on his property. The township zoning board granted a variance permitting towers shorter than Baskin wanted but taller than his neighbors preferred. The neighbors sued in Ohio state court on the theory that the variance was too generous. Baskin intervened there and, the same day, filed a federal action claiming the variance was too restrictive under federal law. The Sixth Circuit reversed the district court's

abstention, explaining that "[t]he two actions arise out of the same basic facts, but they each contest a different aspect of the variance granted by the Township zoning board and they seek different relief," and that the parties relied on "very different theories" in the two actions. *Id.* at 572. Because the cases relied on distinct legal theories and forms of relief, the court held the suits were not parallel. *Id.* at 572–73. Here, the state and federal cases have even less in common.

### D. The Florida case cannot resolve the claims here.

Finally, the caselaw teaches that a state action must be able to resolve all issues raised in the federal case. "[I]f the cases are truly parallel, then the state action will be a vehicle to resolve all issues raised in the federal action." *Walbridge Aldinger Co. v. Aon Risk Servs., Inc. of Pa.*, No. 06-cv-11161, 2006 WL 2376112, at *3 (E.D. Mich. Aug. 16, 2006) (citing *Baskin*, 15 F.3d at 572); *see also Warner v. Greenebaum, Doll & McDonald*, 104 F. App'x 493, 496–97 (6th Cir. 2004).

That is not the case here. A victory for Richard in Florida would not extinguish or reduce the claims against him here. The Florida action cannot resolve whether Richard committed fraud, breached his independent contractual obligations, or converted funds belonging to Ric-Man or CRSM 7800. Nor can it award the monetary and equitable relief Plaintiffs seek in this Court.

"The Supreme Court has made clear that a district court may enter an order staying the proceedings under the *Colorado River* abstention doctrine only if it has

'full confidence' that the parallel proceeding will 'be an adequate vehicle for the complete and prompt resolution of the issues between the parties.'" *Ajuba*, 871 F.Supp.2d at 694 (quoting *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 277 (1988)). "If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismiss at all." *Id.* (quoting *Moses H. Cone*, 460 U.S. at 28.) Indeed, "[a]ny doubt regarding the parallel nature of the related proceeding suit should be resolved in favor of exercising jurisdiction." *Id.* at 695 (citing *Chellman-Shelton*, 197 F. App'x at 395).

To sum up, in assessing substantial similarity, courts consider "the parties involved, the underlying factual allegations, the claims asserted, and the requested relief." *Romine*, 160 F.3d at 340. Each factor cuts against parallelism here. This case involves different parties, different facts, different claims, and different relief.

Because the suits are not parallel, the analysis could end there. *See Crawley*, 744 F.2d at 31. Even if the Court were to proceed, however, the *Colorado River* factors confirm abstention is improper.

## III.   The *Colorado River* Factors Confirm Abstention Is Improper

In *Colorado River* and later decisions, the Supreme Court identified eight factors "that a district court must consider when deciding whether to abstain from exercising its jurisdiction due to the concurrent jurisdiction of a state court." *PaineWebber*, 276 F.3d at 206–07 (citation omitted). They are:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained[;] (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

*Id.* (quoting *Romine*, 160 F.3d at 340–41). "No one factor is necessarily determinative," and the court must undertake "a careful balancing of the important factors as they apply in a given case, with the balance heavily weighed in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 15.

## A. The state court has not assumed jurisdiction over any property.

The state court has not assumed jurisdiction over any *res* or property. Because the task is to identify "exceptional circumstances" justifying the surrender of jurisdiction, *Moses H. Cone*, 460 U.S. at 25–26, the absence of a *res* cuts against abstention. *See PaineWebber*, 276 F.3d at 207 (first factor supports jurisdiction where no res is at issue); *Romine*, 160 F.3d at 341 (same); *Bates v. Ban Buren Twp.*, 122 F. App'x 803, 807 (6th Cir. 2004); *see also CLT Logistics v. River W. Brands*, 777 F.Supp.2d 1052, 1060 (E.D. Mich. 2011) (concluding first factor "disfavor[ed] abstention" where no *res* was at issue). This factor thus weighs against abstention.

## B. The federal forum is not less convenient to the parties.

Defendants never explain how litigating in this Court is inconvenient for them. That silence is dispositive. This factor is meant to measure geographic hardship, *PaineWebber*, 276 F.3d at 207, and they have identified none. *See Colorado River*, 424 U.S. at 820 (noting that "the 300 mile distance between the District Court in Denver and the [relevant state court]" was a significant factor supporting abstention).

Instead, Defendants attack Plaintiffs' citizenship, claiming they are "Michigan citizens in name only" because some entities "directly or indirectly" own Florida assets or travel there often. (PageID.52, 59.) Neither law nor common sense supports that claim.

First, calling Michigan corporations or LLCs—let alone Steven Mancini— "citizens in name only" undermines core jurisdictional concepts like domicile and personal jurisdiction. Plaintiff business entities are incorporated in Michigan, operate here, and bring claims arising from Michigan conduct.

Second, owning a Florida-based asset through a layered corporate structure proves nothing; by that logic, any Michigan resident with a mutual fund holding Disney stock could be said to "own Florida property." Nor does occasional business or personal travel to Florida convert Palm Beach County into a convenient forum; otherwise, a yearly family trip to Disney World would establish venue.

14

When there is "no reason to think the federal forum is less convenient," the factor weighs against abstention. *Bates*, 122 F. App'x at 807. And when each side simply prefers its home forum, courts give this factor no weight. *See United Am. Healthcare Corp. v. Backs*, 997 F. Supp. 2d 741, 753 (E.D. Mich. 2014) . At most, the factor is neutral—and neutrality does not support abstention.

### C.  Abstention would not avoid piecemeal litigation.

Defendants offer no meaningful analysis of this factor. They invoke a handful of Florida compulsory-counterclaim tests, cite general standards, and announce a conclusion—without ever applying those standards to the facts of either case. They never show that the issues of fact and law here are "largely the same," that "substantially the same evidence" would be required, or that res judicata would apply, even though those are the criteria they cite. (*See* ECF No. 9, PageID.60–62.) Such bare assertion falls short: "an inchoate objective to avoid duplicative litigation is not enough to justify abstention." *Leatherworks P'ship v. Boccia*, 247 F. App'x 311, 318 (6th Cir. 2007).

"[P]iecemeal litigation" occurs only where "different courts adjudicate the identical issue, thereby duplicating judicial effort and potentially rendering conflicting results." *Romine*, 160 F.3d at 341. That is not this case. The Florida action centers on trust administration and Richard's employment. This action asserts distinct claims for fraud, conversion, and breaches of loan agreements and

15

corporate obligations. With different parties, facts, claims, and relief, there is no risk of inconsistent judgments.

And even if Defendants were right that Florida law might label some claims "compulsory," that wouldn't matter here. The parallelism inquiry looks to whether the cases are parallel *now*, not whether a state pleading could be restructured to mirror the federal one. *Crawley*, 744 F.2d at 31.[2]

In any event, Defendants are also wrong on the merits. Florida courts applying the "logical relationship" test have repeatedly held that counterclaims arising from independent events or distinct parties—like the claims here—are not compulsory. *See, e.g.*, *Yahya Trading Corp. v. Mohamed*, --- So.3d ---, 2025 WL 2155054, at *1 n.3 (Fla. 3d DCA 2025).[3]

Finally, even where some factual or thematic overlap exists, courts in this circuit routinely reject abstention where the claims or legal frameworks diverge. In *United Am. Healthcare Corp.*, 997 F. Supp. 2d at 754, the court found no real risk of

---

[2] In *Quality Assocs., Inc. v. The Procter & Gamble Distrib. LLC*, 949 F.3d 283, 288 n.3 (6th Cir. 2020), the Court noted in dicta that compulsory-counterclaim concerns might sometimes be raised through *Colorado River* abstention. But it did not suggest the mere existence of a compulsory counterclaim can short-circuit the demanding factor-by-factor inquiry. Whether a counterclaim is compulsory turns on whether it arises from the same nucleus of facts as the opposing claim— essentially the same inquiry *Colorado River* requires in asking whether the suits are parallel, involve the same parties and issues, and risk inconsistent results.

[3] Further, a claim "against an opposing party" is what Fla. R. Civ. P. 1.170(a) makes compulsory. But RMC is not a party in the Florida action.

16

piecemeal litigation even though both actions involved alleged misappropriation of confidential information because they implicated different contracts and different legal frameworks. Likewise, in *CLT Logistics*, the court rejected abstention where the state suit concerned trademark ownership, but the federal action added infringement and federal statutory claims. 777 F. Supp. 2d at 1061.

In short, the claims here stand on independent footing, and litigating them in federal court will not result in piecemeal adjudication. When there is no risk of duplicative rulings on the same issues, abstention is not merely unwarranted—it is "a serious abuse of discretion." *Chellman-Shelton*, 197 F. App'x at 394.

### D. Neither case is meaningfully further along than the other.

Although Richard filed his Florida complaint on December 6, 2024, that case has not advanced meaningfully beyond this one. The Supreme Court has made clear that "[p]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21; *see CLT Logistics*, 777 F. Supp. 2d at 1061.[4]

After removal and remand, Richard filed his First Amended Complaint in Florida on May 14, 2025—less than a month before Plaintiffs filed this action. In

---

[4] *CLT Logistics* noted that "the first-to-file factor is largely subsumed in the relative progress factor," so a separate analysis of these factors is unnecessary. 777 F. Supp. 2d at 1061.

both courts, the defendants have moved to dismiss rather than answering, so neither case is past the pleadings stage. Although Richard has served discovery in Florida, the defendants only recently filed responses and objections, and the case remains in its early stages.

"Absent a strong showing that the state-court litigation is well in advance of this case, this factor slightly disfavors abstention." *CLT Logistics*, 777 F. Supp. 2d at 1062 (citing *Inrecon, LLC v. Highland Ins. Co.*, 284 F. Supp. 2d 773, 780 (E.D. Mich. 2003) (jointly considering the priority of filing and relative progress factors, and holding that because the state case was at "essentially the same point" as the federal case, "this factor weighs against granting abstention, not for it."); *cf. Romine*, 160 F.3d at 341–42 (factor favored abstention only where the state case had "considerably" advanced into discovery)).

### E. Michigan—not Florida—law governs the claims.

Defendants assert that this factor favors abstention because "[t]he governing law is state law, not federal." (ECF No. 9, PageID.60.) But the Supreme Court has made clear that the mere presence of state-law issues "will usually not present the kind of 'exceptional circumstances' required for abstention." *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 887 (6th Cir. 2002) (citing *Moses H. Cone*, 460 U.S. at 25); *see United Am. Healthcare Corp.*, 997 F.Supp.2d at 753 ("When the state law issues are routine, such as breach of contract, fraud, or conversion, the state issues do not

18

constitute "a 'rare' or exceptional circumstance where a district court should decline jurisdiction." (cleaned up)).

Moreover, the claims here arise under *Michigan* law—not Florida's—including Michigan's statutory conversion statute, Mich. Comp. Laws § 600.2919, and Michigan common law. In *Taylor v. Campanelli*, this Court found that the "governing law" factor supported abstention only because a Michigan business court likely had greater experience with shareholder disputes under Michigan law. 29 F. Supp. 3d at 979. Here, by contrast, this Court is far more familiar with Michigan law than any Florida state court. This factor weighs against abstention.[5]

### F.  The Florida action cannot protect Plaintiffs' rights.

Defendants assert that this factor favors abstention because the Florida state court "can and will adequately protect Plaintiffs' rights." (ECF No. 9, PageID.60.) But "[t]he fact that the state court will protect [a party's rights]…does not provide the 'exceptional' circumstances necessary to justify abandoning  the 'virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.'" *PaineWebber*, 276 F.3d at 209 (quoting *Colorado River*, 424 U.S. at 817).

---

[5] Defendants also assert that the Florida court has jurisdiction over all parties. (ECF No. 9, PageID.60.) That issue remains unresolved in Florida, and in any event, is irrelevant to the "source of law" factor, which concerns governing substantive law, not personal jurisdiction.

19

This case also does not present the typical *Colorado River* scenario in which the same claims are pending in both state and federal courts. In those cases, there is little reason to doubt the state court's ability to resolve the issues. But here, Plaintiffs assert distinct claims for fraud, conversion, and breach of contract—none of which are at issue in the Florida employment and trust litigation. The Florida action therefore cannot "protect the federal plaintiffs' rights" because those rights are not even at issue. *See CLT Logistics*, 777 F. Supp. 2d at 1063 ("That consideration is inapplicable here, because only the federal case contains [the relevant] claims." (cleaned up)).

Defendants' suggestion that Plaintiffs could have brought these claims as counterclaims in Florida misses the point. The Sixth Circuit has made clear that the question is whether the state action, "as it *currently* exists, is a parallel, state-court proceeding," not whether it could have been modified to mirror the federal-court claims. *Crawley*, 744 F.2d at 31. In a similar context, the court explained:

> [A]lthough it is possible that Baskin could have brought a cross-claim in the state court action…in deciding whether a state action is parallel for abstention purposes, the district court must compare the issues in the federal action to the issues actually raised in the state court action, not those that might have been raised.

*Baskin*, 15 F.3d at 572 (citing *Crawley*, 744 F.2d at 31).

Because the Florida action cannot resolve the claims Plaintiffs bring here, this factor strongly disfavors abstention.

### G. Concurrent jurisdiction carries little weight.

No one disputes that both the federal and state courts would have subject-matter jurisdiction over Plaintiffs' claims. This factor therefore modestly favors abstention. *See United Am. Healthcare Corp.*, 997 F. Supp. 2d at 753.

Even so, it is "not entitled to significant weight." *CLT Logistics*, 777 F.Supp.2d at 1063 (citing *PaineWebber*, 276 F.3d at 208 ("The presence of concurrent jurisdiction only marginally, if at all, favors abstention."); *UEI, Inc. v. Quality Fabricated Metals, Inc.*, No. 1:06-cv-122, 2006 WL 1541353, at *6 (W.D. Mich. June 1, 2006) ("The final factor, the presence or absence of concurrent jurisdiction, is of little significance as both courts have jurisdiction.")). Accordingly, while this factor is acknowledged, it does little to offset the other factors that strongly disfavor abstention.

### H. The balance of the *Colorado River* factors does not support abstention.

The *Colorado River* factors overwhelmingly disfavor abstention. The Florida court has not assumed jurisdiction over any *res*; the federal forum is not less convenient; abstention would not avoid piecemeal litigation; neither case is further along; Michigan law governs; and the Florida action cannot protect Plaintiffs' rights. Only concurrent jurisdiction favors abstention—and that factor is "not entitled to significant weight." *CLT Logistics*, 777 F. Supp. 2d at 1063.

Where, as here, the factors weigh against abstention or are neutral, there can be no finding of the "exceptional circumstances" or the "clearest of justifications" required to justify declining jurisdiction. *Moses H. Cone*, 460 U.S. at 25–26. Indeed, courts in this district have emphasized that even when the factors are in equipoise, abstention is inappropriate. *See CLT Logistics*, 777 F. Supp. 2d at 1063 (citing *Gentry v. Wayne County*, No. 10-cv-11714, 2010 WL 4822749, at *6 (E.D. Mich. Nov. 22, 2010) ("[T]he relative equality of factors actually makes the decision to abstain inappropriate, because there cannot be *Colorado River* abstention in a close case.")).

### IV. If abstention were warranted, a stay—not dismissal—would be the proper course.

Even if the Court were to find abstention appropriate under *Colorado River*, a stay, not dismissal, is required. *See Bates*, 122 F. App'x at 808–09 ("We therefore join other circuits in requiring a stay of proceedings rather than a dismissal in *Colorado River* abstention cases."); *see also Taylor*, 29 F. Supp. 3d at 981 (staying action under *Colorado River*).

<u>CONCLUSION</u>

For these reasons, Defendants' Motion to Dismiss or Stay should be denied.

September 8, 2025                    Respectfully submitted,

**Blevins Sanborn Jezdimir Zack PLC**

/s/Don W. Blevins III
Don W. Blevins III (P81773)

22

dwblevins@bsjzlaw.com
Don W. Blevins (P64146)
dblevins@bsjzlaw.com
300 Park Street, Suite 285
Birmingham, MI 48009
(313) 338-9500
*Attorneys for Plaintiffs*