UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RIC-MAN CONSTRUCTION, INC.,
and STEVEN MANCINI,

      Plaintiffs/Counter-Defendants,      Case No. 25-cv-11774

v.      Hon Mark A. Goldsmith
      Magistrate Judge Kimberly G. Altman

RICHARD MANCINI
CONSTRUCTION, INC. and
RICHARD MANCINI,

      Defendants/Counter-Plaintiffs.

v.

LISA MANCINI,

      Counter-Defendant.

---

## FIRST AMENDED COMPLAINT

Plaintiffs Ric-Man Construction, Inc. and Steven Mancini state the following for their First Amended Complaint against Richard Mancini Construction, Inc. and Richard Mancini.

## PARTIES

1. Plaintiff Ric-Man Construction, Inc. ("RCI") is a Michigan corporation with its principal offices in Macomb County, Michigan.

2. Steven Mancini is a resident of Macomb County, Michigan.

3.      Defendant Richard Mancini is a Florida resident.

4.      Richard Mancini is the son of Steven Mancini and Lisa Mancini.

5.      Defendant Richard Mancini Construction, Inc. ("RMC") is a corporation organized under the laws of the State of Florida.

6.      Defendant Richard Mancini is the sole shareholder of RMC.

<u>JURISDICTION AND VENUE</u>

7.      This Court has subject matter jurisdiction over the instant action on the basis of diversity pursuant to 28 U.S.C. § 1332(a) because (a) Plaintiffs Ric-Man Construction, Inc. and Steven Mancini are citizens of the State of Michigan; (b) Defendants Richard Mancini Construction , Inc. and Richard Mancini are citizens of the State of Florida; and (c) the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8.      This Court has personal jurisdiction over Defendant Richard Mancini under Michigan's long-arm statute, MCL 600.705, because he transacted business in the State of Michigan and in this judicial district, he committed tortious acts in the State of Michigan and in this judicial district, and he caused injury to persons and property in the State of Michigan and in this judicial district through acts both within and outside the State and in this judicial district. Richard has acknowledged that he is subject to personal jurisdiction in his Answer to the original Complaint.

9.      Defendant Richard Mancini purposefully availed himself of the privilege of conducting activities within Michigan, the causes of action stated herein arise out of

or relate to his Michigan contacts, and the exercise of jurisdiction comports with due process.

10. This Court has personal jurisdiction over Defendant Richard Mancini Construction, Inc. ("RMC") pursuant to Michigan Compiled Laws § 600.715 because it transacted business within the State of Michigan and this judicial district; engaged in a continuing course of conduct within the State of Michigan and this judicial district and outside of the State of Michigan and this judicial district, causing harm within the State of Michigan and resulting in an action for tort; and entered into contracts with Michigan entities. RMC has acknowledged personal jurisdiction in its Answer to the initial Complaint.

11. Defendant RMC purposefully availed itself of the privilege of conducting activities within Michigan, the causes of action stated herein arise out of or relate to its Michigan contacts, and the exercise of jurisdiction comports with due process.

12. At all times relevant to this Complaint, Richard Mancini maintained an office in Macomb County, Michigan, where he engaged in work for RMC.

13. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) and (b) because Plaintiffs are residents of this judicial district and/or because a substantial part of the events or omissions giving rise to this dispute occurred in this district.

<u>FACTUAL ALLEGATIONS</u>

14. Plaintiff RCI is engaged in heavy civil underground and tunnel

- 3 -

construction.

15.     Mancini Enterprises is, among other things, a management company that supports various Mancini-affiliated entities.

16.     In 2018, Richard Mancini formed Defendant RMC, a Florida-based construction company.

17.     In this capacity, he had access to and controlled and directed Mancini Enterprises' bank accounts, as well as the bank accounts of several affiliated companies.

18.     Beginning in 2019 and continuing until September 2024, RCI loaned RMC startup and operating capital. RCI advanced RMC funds to purchase equipment, pay overhead, vendors, and employees, and otherwise support RMC's business operations.

19.     Consistent with the understanding and agreement of the parties, RCI and RMC accounted for the financial support provided to RMC as loans.

20.     RMC has failed to repay these funds and defaulted on these loans, which total more than $10.5 million.

21.     Richard and RMC have repeatedly acknowledged the indebtedness verbally and in writing, including in financial submissions to third parties.

22.     Richard often abused his position of trust and charged expenses to credit cards that were paid by RCI and recorded as loans to RMC.

23.     The full extent of Richard's misuse and misappropriation of funds has not yet been determined.

24. On or about December 28, 2023, Steven informed Richard that RCI would not advance funds to pay Richard's personal expenses. Instead, all advances would be limited to those required for legitimate business expenses.

25. This directive was unambiguous, immediately effective, and well understood by Richard.

26. In 2024, Richard demanded a new $150,000 Porsche and a $4 million house in Miami.

27. Steven refused and directed that any payments to RMC would have to be pursuant to valid invoices.

28. To evade RCI's refusal to pay Richard's personal expenses, Richard repeatedly misrepresented advances to RMC or Richard as business expenses when, in fact, many were used to pay his personal expenses, including personal credit card expenses and a snowmobile.

29. He accomplished his scheme by abusing his positions of trust and access to and control over company bank accounts, directing subordinates to make unauthorized transfers, and submitting inflated and fraudulent invoices.

30. These acts constituted intentional fraud, misappropriation of funds, and conversion of corporate property for personal use.

31. A specific list of such transactions known to date is summarized and attached as Exhibit A, which is incorporated by reference.

32. When Richard was confronted with his unlawful and tortious conduct,

he responded with comments such as that he was "taking care of me first."

33. By 2023, RMC's debt to RCI, both from loans related to RMC's operating expenses and from funds converted by Richard and RMC under false pretenses, had grown to more than $8 million. To reduce that, RCI and RMC agreed that RCI would forgive $4 million in RMC debt. In exchange, RMC agreed to transfer to RCI title to some of the heavy equipment it had purchased with the advances given by RCI.

34. Richard agreed to this arrangement in front of witnesses.

35. While Richard and RMC physically transferred some equipment from Florida to Michigan under this arrangement, they later refused to complete the transfers of title and then demanded return of the transferred assets.

36. Richard caused RMC to auction off the equipment he agreed to transfer to RCI.

37. Richard caused RMC to transfer some or all of the proceeds of the equipment sale to Richard for his personal use.

38. Upon information and belief, Richard auctioned off and liquidated other assets of RMC.

39. Upon information and belief, Richard caused RMC to transfer some or all of the proceeds of the sale of such other assets of RMC to Richard for his personal use.

40. Richard's foregoing conduct was part of a campaign to liquidate RMC's

assets, convert them to cash for his personal use, and defraud creditors, including RCI.

41. In 2023 and again in 2024, the right to collect portions of the outstanding RMC loan balance, totaling $8 million of the $10.5 million loan balance, were transferred from RCI to Steven Mancini, with the remaining debt still held by RCI.

## Count I
### Breach of Loan Agreement
### (Against RMC and Richard by RCI and Steven Mancini)

42. Plaintiffs incorporate all preceding allegations by reference.

43. As set forth herein, Plaintiff RCI and RMC agreed that RCI would provide substantial financial support to RMC, including startup and operating capital, and that RMC would repay the funds.

44. RCI and Steven Mancini made repeated demands for repayment of the outstanding loan balance, but those demands have been rebuffed.

45. RMC has materially breached the loan agreement and caused Plaintiffs substantial damages.

46. Rather than require RMC to repay the indebtedness, Richard has siphoned funds from RMC for personal use, rendered RMC unable to pay its debts, liquidated RMC's assets for his personal use without paying creditors, commingled funds, used RMC as an instrumentality for his personal benefit, and abused the corporate form to perpetrate a fraud on Plaintiffs, justifying piercing the corporate veil of RMC and holding Richard personally liable for RMC's debts.

FOR ALL THE ABOVE REASONS, Plaintiffs request that this Court enter

judgment in their favor against Defendants Richard Mancini and RMC, jointly and severally, in an amount to be determined at trial but in excess of $75,000, together with interest, costs, and any other relief that the Court deems just and proper.

### Count II
**Breach of Partial Settlement Agreement**
**(Against RMC and Richard by RCI)**

47.     Plaintiffs incorporate all preceding allegations by reference.

48.     In or around 2023, RCI, Richard Mancini, and RMC entered into an agreement to settle a portion of RMC's debt owed to RCI.

49.     Under the terms of the agreement, RCI agreed to forgive approximately $4 million of RMC's debt in exchange for the transfer of equipment purchased with funds loaned from RMC to RCI.

50.     Upon information and belief, the equipment had a market value, net of indebtedness, in excess of $900,000.

51.     Richard Mancini agreed to this arrangement and initially permitted the transfer of certain equipment from Florida to RCI in Michigan.

52.     But Richard later refused to complete the equipment transfer, demanded return of equipment already transferred, and retained or sold the equipment for his own benefit.

53.     By failing to deliver the agreed-upon consideration (the equipment), Defendants materially breached the partial settlement agreement.

54.     As a result of Defendants' breach, Plaintiffs were deprived of the agreed-

upon consideration for the debt forgiveness agreement and suffered financial harm.

55. Rather than require RMC to repay the indebtedness, Richard has siphoned funds from RMC for personal use, rendered RMC unable to pay its debts, liquidated RMC's assets for his personal use without paying creditors, commingled funds, used RMC as an instrumentality for his personal benefit, and abused the corporate form to perpetrate a fraud on Plaintiffs, justifying piercing the corporate veil of RMC and holding Richard personally liable for RMC's debts.

FOR ALL THE ABOVE REASONS, Plaintiffs request that this Court enter judgment in their favor against Defendants Richard Mancini and RMC, jointly and severally, for breach of the partial settlement agreement, in an amount to be determined at trial but in excess of $75,000, together with costs, interest, and any other relief this Court deems just and appropriate.

### Count III
### Fraud
### (Against Richard Mancini by RCI)

56. Plaintiffs incorporate all preceding allegations by reference.

57. As set forth herein, Richard borrowed funds from RCI based on the fraudulent misrepresentation that all of the funds were being used for valid business expenses, such as RMC supplier invoices, employee payroll, equipment costs, and overhead.

58. Defendant Richard Mancini induced RCI to advance substantial sums by representing that the funds were needed to pay suppliers or other legitimate business

expenses.

59. RCI reasonably relied on Richard's fraudulent misrepresentations and advanced the funds.

60. Richard knew at the time of each request that he intended to divert large portions of the advanced funds to personal uses, in direct contravention of the stated purpose of the transfers.

61. Exhibit A to this complaint (which is incorporated by reference) is a table of every transfer of funds known to date that RCI made to RMC based on Richard's misrepresentation that the funds would be used to satisfy only legitimate business expenses.

62. Following receipt of the funds transfers itemized in the table at Exhibit A, Richard repeatedly caused RMC to pay personal expenses out of funds that he had obtained through his fraudulent misrepresentations.

63. Exhibit B (which is incorporated by reference) is a table showing each of the payments known to date that Richard caused RMC to make for his personal expenses from funds that he obtained from RCI based on the above fraudulent misrepresentations.

64. The full extent of Richard's misuse and misappropriation of funds has not yet been determined.

65. As a direct and proximate result of Richard Mancini's fraudulent conduct, Plaintiffs have sustained damages, including but not limited to the value of

misappropriated funds, attorney fees, and other losses.

FOR ALL THE ABOVE REASONS, RCI requests that this Court enter judgment in its favor against Defendant Richard Mancini for fraud in an amount to be determined at trial but in excess of $75,000, award exemplary damages and compensatory damages, and grant any other relief that the Court deems just and proper.

### Count IV
### Statutory and Common Law Conversion
### (Against Richard Mancini by RCI)

66.     Plaintiffs incorporate all preceding allegations by reference.

67.     Richard's concealment of material facts, coupled with affirmative misrepresentations, enabled him to obtain RCI's property by false pretenses.

68.     As set forth herein and summarized on Exhibits A and B, which are incorporated by reference, Richard Mancini unlawfully diverted and exercised dominion and control over RCI's funds and converted those funds to his own use.

69.     Such conduct constitutes common law conversion and statutory conversion under MCL 600.2919a(1)(a), which permits recovery for a person damaged by another's stealing, embezzling, or converting property to their own use, and allows for treble damages, costs, and reasonable attorney fees.

70.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiffs have sustained damages, including the value of misappropriated funds, investigative and accounting expenses, increased tax exposure, legal fees, and other losses.

- 11 -

FOR ALL THE ABOVE REASONS, RCI requests that this Court enter judgment in its favor against Defendant Richard Mancini for common law and statutory conversion under MCL 600.2919a, in an amount to be determined at trial but in excess of $75,000, including treble damages, costs, and attorney fees, and for any other relief that the Court deems just and proper.

## Count V
### Quantum Meruit/Unjust Enrichment

71.     Plaintiffs incorporate all preceding allegations by reference.

72.     This Count is pled in the alternative in the unlikely event the Court finds there is no express contract between the parties.

73.     Defendants have been unjustly enriched at the expense of each Plaintiff by wrongfully obtaining and using their funds for their personal benefit, without permission, justification, or lawful basis.

74.     Between June 2020 and September 2024, RCI conferred substantial benefits upon Defendants Richard Mancini and RMC by providing millions of dollars in capital, equipment funding, and operational support.

75.     These funds were provided to enable RMC to conduct its business operations, including the purchase of construction equipment, payment of vendors and employees, and coverage of project expenses.

76.     RCI provided these benefits with the expectation that it would be repaid in full.

77. Defendants knowingly accepted and retained the benefits conferred, including cash, equipment, and other financial support.

78. Despite receiving these benefits, Defendants have failed to provide repayment or equivalent consideration to Plaintiffs.

79. The value of the benefits conferred in startup and operational funds exceeds $10.5 million, for which Defendants have provided no adequate compensation.

80. Further, Richard Mancini unlawfully obtained substantial funds from RCI for personal use, as set forth herein.

81. In reliance on Richard's representations that funds were needed to pay subcontractors, equipment, or payroll costs, RCI released funds to RMC on the understanding they would be used exclusively for operational expenses.

82. As alleged in detail herein and summarized in Exhibits A and B, Richard Mancini instead diverted significant portions of these funds for personal use, including, but not limited to, payments on his personal credit cards and cash withdrawals for unknown purposes.

83. Defendants knowingly accepted and retained the benefits conferred.

84. Despite receiving these benefits, Defendants have failed to provide repayment or equivalent consideration to Plaintiffs.

FOR ALL THE ABOVE REASONS, Plaintiffs respectfully request that the Court award restitution in the amount of the funds unjustly retained by Richard Mancini, including improperly diverted transfers and unpaid loans. Plaintiffs also request that the

Court impose a constructive trust over any traceable assets or funds in Richard Mancini's possession that came from these unjustly retained amounts; and that all Plaintiffs be awarded any further relief the Court deems just and proper.

## Count VI
### Michigan Uniform Voidable Transactions Act, MCL 566.31 et seq.
### (Against RMC and Richard Mancini by RCI and Steven Mancini)

85.     RCI and Steven Mancini are "creditors" of Defendant RMC within the meaning of MCL 566.31, as they hold claims for unpaid loan balances exceeding $10.5 million in total.

86.     As set forth herein, Defendant Richard Mancini has caused RMC to sell or otherwise transfer the equipment referenced above and RMC's other corporate assets in a purposeful campaign to liquidate RMC's assets, convert them to cash for his personal use, and defraud creditors.

87.     Defendant Richard Mancini has transferred the cash proceeds of the foregoing sales and liquidation of assets to himself, or otherwise used them for his personal benefit, with the express intent of defrauding the creditors of RMC.

88.     The transfers of RMC's assets to Richard are voidable under MCL 566.34(1)(a) because they were made with the actual intent to hinder, delay, or defraud RCI.

89.     Without limitation, Defendants' actual intent to defraud is evidenced by the fact that:

> a.  Richard concealed the true nature of these liquidations by

- 14 -

misrepresenting personal draws as "business expenses" and "inflated/fraudulent invoices";

b. The transfers occurred after Richard was confronted with his failure to pay the loans and his tortious conduct and after RCI demanded title to the equipment;

c. The transfers were made for the benefit of Richard Mancini, who is an "insider' as the sole shareholder of RMC;

d. The liquidation involves the transfer of all or substantially all of RMC's remaining valuable equipment and operating cash;

e. Richard transferred all cash proceeds to himself, or otherwise used them for his personal benefit;

f. RMC was insolvent at the time of the transfers or became insolvent as a direct result of Richard's campaign to siphon funds; and,

g. RMC and/or Richard have been sued by multiple other creditors for non-payment of debts.

90. Alternatively, these transfers are voidable under MCL 566.34(1)(b) because RMC did not receive a reasonably equivalent value in exchange for the equipment sales or cash diversions.

91. At the time of these transfers, Richard Mancini knew or reasonably should have believed that RMC had debts—including the obligation at issue in excess of $10.5 million and RMC's obligations to other creditors—beyond its ability to pay as they became due.

92. Richard Mancini has siphoned funds out of RMC, liquidated its assets for his personal benefit, rendered RMC incapable of paying its creditors, and used RMC as a mere "instrumentality" for his personal enrichment, commingling and siphoning funds to ensure that RMC remains unable to satisfy its lawful obligations to its creditors.

93.     In the alternative to Count IX, these transfers are voidable under the Florida Uniform Fraudulent Transfer Act, Fla. Stat. § 726.105.

FOR ALL THE ABOVE REASONS, Plaintiffs request that this Court enter judgment in their favor against Defendant Richard Mancini for fraudulent transfer and void the fraudulent transfers, enter an injunction against further disposition of assets, appoint of a receiver for RMC, enter a money judgment, including exemplary damages and compensatory damages, against Richard Mancini as the personal beneficiary of the voidable transfers, and grant any other relief that the Court deems just and proper.

## JURY DEMAND

Plaintiffs request trial by jury of all matters so triable.

Dated: May 12, 2026

Respectfully submitted,

*/s/ Joseph E. Viviano*

Joseph E. Viviano (P60378)
Thomas J. Davis (P78626)
David Porter (P76785)
KIENBAUM HARDY
VIVIANO PELTON & FORREST, P.L.C.
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI 48009
(248) 645-0000
jviviano@khvpf.com
tdavis@khvpf.com
dporter@khvpf.com

*Attorneys for Plaintiff/Counter-Defendants*

611172

- 16 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 12, 2026, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all parties of record.

*/s/ Joseph E. Viviano*
Kienbaum Hardy Viviano
  Pelton & Forrest, P.L.C.
280 N. Old Woodward Ave., Suite 400
Birmingham, MI  48009
(248) 645-0000
jviviano@khvpf.com
(P60378)

# EXHIBIT A

## Exhibit A

RCI funds transferred to RMC based on business expense representation.

| Date | Transfer Requested |
|---|---|
| 12-28-2023 | $10,941.44 |
| 12-28-2023 | $38,086.05 |
| 1-03-2024 | $13,888.56 |
| 1-04-2024 | $15,574.59 |
| 1-09-2024 | $190,000.00 |
| 1-10-2024 | $21,113.60 |
| 1-17-2024 | $19,963.74 |
| 1-24-2024 | $20,127.44 |
| 1-31-2024 | $23,545.43 |
| 2-01-2024 | $300,000.00 |
| 2-07-2024 | $19,160.18 |
| 2-08-2024 | $1,733.71 |
| 2-14-2024 | $19,526.08 |
| 2-15-2024 | $600.00 |
| 2-21-2024 | $19,939.10 |
| 2-21-2024 | $43,000.00 |
| 2-28-2024 | $22,448.00 |
| 3-05-2024 | $24,000.00 |
| 3-06-2024 | $19,461.91 |
| 3-08-2024 | $747.62 |
| 3-12-2024 | $127,000.00 |
| 3-13-2024 | $21,843.89 |
| 3-19-2024 | $37,000.00 |
| 3-20-2024 | $24,286.17 |
| 3-27-2024 | $18,810.44 |
| 3-29-2024 | $12,000.00 |
| 4-03-2024 | $22,839.49 |
| 4-04-2024 | $26,000.00 |
| 4-10-2024 | $27,046.36 |
| 4-17-2024 | $29,718.80 |
| 4-24-2024 | $28,350.96 |

## Exhibit A

RCI funds transferred to RMC based on
business expense representation.

| Date | Transfer Requested |
|------|-------------------|
| 4-25-2024 | $335,000.00 |
| 5-01-2024 | $24,728.47 |
| 5-08-2024 | $21,371.20 |
| 5-08-2024 | $252,000.00 |
| 5-15-2024 | $18,297.72 |
| 5-22-2024 | $15,284.14 |
| 5-29-2024 | $23,036.00 |
| 6-03-2024 | $20,000.00 |
| 6-05-2024 | $18,015.49 |
| 6-06-2024 | $47,000.00 |
| 6-12-2024 | $23,196.49 |
| 6-14-2024 | $32,000.00 |
| 6-19-2024 | $15,230.25 |
| 6-25-2024 | $180,000.00 |
| 6-26-2024 | $19,733.18 |
| 7-03-2024 | $19,557.06 |
| 7-10-2024 | $18,824.42 |
| 7-10-2024 | $40,000.00 |
| 7-17-2024 | $17,938.49 |
| 7-24-2024 | $20,226.71 |
| TOTAL: | $2,311,165.69 |

Case 2:25-cv-11774-MAG-KGA   ECF No. 37, PageID.685   Filed 05/12/26   Page 21 of 23

# EXHIBIT B

## <u>EXHIBIT B</u>

RMC/Richard Mancini Personal Expense Transfers Following RCI
December 28, 2023 Prohibition

| <u>Date</u> | <u>Description</u> | <u>Amount</u> |
|---|---|---|
| 12-28-2023 | AMEX | $5,532.57 |
| 1-16-2024 | AMEX | $52.73 |
| 1-16-2024 | AMEX | $639.19 |
| 1-22-2024 | AMEX | $2,077.59 |
| 1-22-2024 | AMEX | $6,000.00 |
| 2-05-2024 | AMEX | $5,000.00 |
| 2-05-2024 | AMEX | $5,000.00 |
| 2-12-2024 | AMEX | $5,843.25 |
| 2-15-2024 | AMEX | $209.95 |
| 3-05-2024 | AMEX | $1,917.46 |
| 3-05-2024 | AMEX | $4,706.37 |
| 3-18-2024 | AMEX | $4,179.56 |
| 4-01-2024 | AMEX | $1,494.20 |
| 4-01-2024 | AMEX | $6,803.10 |
| 4-02-2024 | 360 Sheffield/RM Snow mobile | $1,000.00 |
| 4-15-2024 | AMEX | $319.09 |
| 4-15-2024 | AMEX | $5,775.54 |
| 5-02-2024 | 360 Sheffield(Snow Mobile) | $1,000.00 |
| 5-06-2024 | AMEX | $6,054.14 |
| 5-13-2024 | AMEX | $3,893.98 |
| 5-15-2024 | AMEX | $866.43 |
| 5-28-2024 | Chase CC | $1,194.89 |
| 5-28-2024 | AMEX | $5,294.95 |
| 5-28-2024 | Chase CC | $6,540.00 |
| 6-04-2024 | 360 Sheffield(Snow mobile) | $1,000.00 |
| 6-10-2024 | AMEX | $5,816.41 |
| 6-17-2024 | AMEX | $887.76 |
| 6-24-2024 | AMEX | $2,184.56 |
| 6-24-2024 | AMEX | $6,383.11 |
| 6-26-2024 | AMEX | $1,544.16 |
| 7-01-2024 | 360 Sheffield Fi | $1,250.00 |

| | | |
|---|---|---:|
| 7-05-2024 | AMEX | $1,791.88 |
| 7-05-2024 | AMEX | $5,947.96 |
| 7-15-2024 | AMEX | $5,564.23 |
| 7-26-2024 | AMEX | $914.96 |
| 7-26-2024 | AMEX | $1,091.85 |
| 7-26-2024 | AMEX | $6,570.44 |
| 7-26-2024 | City Card | $11,820.50 |
| 7-29-2024 | City Card | $2,000.00 |
| 7-30-2024 | 360 Sheffield | $1,250.00 |

Total:   $137,412.81