UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RIC-MAN CONSTRUCTION, INC.,
and STEVEN MANCINI,

      Plaintiffs/Counter-Defendants,      Case No. 25-cv-11774

v.                                 Hon Mark A. Goldsmith
                                    Magistrate Judge Kimberly G. Altman

RICHARD MANCINI
CONSTRUCTION, INC. and
RICHARD MANCINI,

      Defendants/Counter-Plaintiffs.

v.

LISA MANCINI,

      Counter-Defendant.

---

## MOTION TO DISMISS AMENDED COUNTERCLAIM

1.     Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), Plaintiffs/Counter-Defendants respectfully request that the Court dismiss Defendants/Counter-Plaintiffs' Amended Counterclaim with prejudice.

2.     The main addition to the Amended Counterclaim is a silent fraud claim that recapitulates, without specificity, breach of trust claims Counter-Plaintiff Richard Mancini has been pursuing in two other courts for the past eighteen months. Richard is the second of four children of Counter-Defendants Steven and Lisa Mancini, who reside in Macomb County, Michigan. Steven is the grantor and Lisa is the Trustee of

various trusts established for the benefit of their children. In 2024, Lisa exercised a limited, non-fiduciary power of appointment granted in the applicable trust documents and appointed the trust assets to a new trust of which Richard is not a beneficiary.

3.      On December 6, 2024, Richard, a Florida resident, sued his parents, his sister (Christina), and his father's companies in Palm Beach County, Florida (Case No. 2024-CA-011586), alleging wrongful termination of employment and breaches of trust based on failure to provide trust accountings. (See register of actions, Ex. C to accompanying brief). On May 14, 2025, Richard filed a First Amended Complaint in Florida, greatly expanding his breach of trust allegations against his mother and sister, accusing them of engaging in millions of dollars of wrongful transactions, and adding aiding and abetting breach of trust allegations against his father.

4.      In July 2025, Richard's mother, Lisa, and his sister, Christina, filed a petition for declaratory relief and instruction in Macomb County Probate Court asserting that because all of the trusts at issue were administered in Macomb County, Michigan, Richard's breach of trust claims should have been filed in Macomb County. The Macomb Probate Court agreed and, on July 29, 2025, entered an order asserting exclusive jurisdiction over all of Richard's breach of trust claims and placing the relevant trusts under its supervision. (See July 29, 2025 Order, Ex. B to accompanying brief).

5.      For the next eight months, Richard resisted the Macomb County Probate Court's decision and attempted to rush his breach of trust claims to trial in Florida. However, the Florida court ultimately dismissed all of Richard's Florida claims in favor

of the Michigan forum (with Richard voluntarily dismissing his breach of trust claims against Lisa and his aiding and abetting breach of trust claims against Steven under threat of sanctions).

6.     On March 9, 2026, Richard advised the Macomb Probate Court that he had gotten the message and would be filing and litigating his breach of trust petitions in that Court. In early April, he filed six separate breach of trust petitions against Lisa and Christina in Macomb Probate Court. (See Petitions related to Lisa, Ex. A1-5 to accompanying brief). Richard nevertheless now seeks also to litigate his breach of trust claims here under the guise of a new "silent fraud" count.

7.     Plaintiffs/Counter-Defendants rely on the bases for this Motion set forth in the accompanying brief and attachments. Counter-Defendants' counsel explained the nature of this Motion and its legal basis with Counter-Plaintiffs' counsel by email on June 22, 2026, and requested but did not obtain concurrence in the relief sought.

Dated: June 23, 2026               Respectfully submitted,

                                   /s/ Joseph E. Viviano
                                   Joseph E. Viviano (P60378)
                                   KIENBAUM HARDY
                                   VIVIANO PELTON & FORREST, P.L.C.
                                   280 N. Old Woodward Ave., Ste. 400
                                   Birmingham, MI 48009
                                   (248) 645-0000
                                   jviviano@khvpf.com
                                   *Attorneys for Plaintiff/Counter-Defendants*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RIC-MAN CONSTRUCTION, INC.,
and STEVEN MANCINI,

        Plaintiffs/Counter-Defendants,        Case No. 25-cv-11774

v.                                Hon Mark A. Goldsmith
                                      Magistrate Judge Kimberly G. Altman

RICHARD MANCINI
CONSTRUCTION, INC. and
RICHARD MANCINI,

        Defendants/Counter-Plaintiffs.

v.

LISA MANCINI,

        Counter-Defendant.

---

**BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED
COUNTERCLAIM**

# TABLE OF CONTENTS

Table of Authorities ................................................................................................... iii

STATEMENT OF ISSUES PRESENTED ...................................................................... vi

CONTROLLING OR MOST APPROPRIATE AUTHORITY ................................. viii

INTRODUCTION.......................................................................................................... 1

BACKGROUND............................................................................................................ 1

A.  Richard makes the same breach of trust allegations he is already
     litigating in Macomb County Probate Court, with no specificity. ........................ 1

B.  Richard alleges he was induced to leave his prior employment
     with vague promises (made in 2016) about the future. ......................................... 3

C.  Richard makes the contradictory allegations that funds were
     converted long ago and that he was promised a higher rate of
     interest. ................................................................................................................. 6

LEGAL STANDARD..................................................................................................... 7

ARGUMENT .................................................................................................................. 8

I.   Richard's claim for breach of employment agreement (Count I)
     fails because the alleged prior just-cause employment relationship
     was extinguished and not recreated. ...................................................................... 8

II.  Richard's employment-adjacent claims fail for a host of reasons....................... 11

     A.  Richard's fraudulent inducement claim (Count VI) is barred
          by the statute of limitations and does not plead actionable
          fraud. ............................................................................................................. 11

     B.  Richard does not state a claim for promissory estoppel
          (Count VII). .................................................................................................. 14

III. Richard has not stated a claim for Quantum Meruit/Unjust
     Enrichment (Count VIII) ..................................................................................... 17

IV.   The claim for breach of a contract between Ric-Man and RMC
      (Count II) fails because the alleged contract is illegal and lacks
      mutuality................................................................................................. 18

V.    Richard's conversion claims (Counts III & IV) are barred by the
      statute of limitations and fail to state a proper damages claim. .......................... 19

VI.   Richard's silent fraud claim does not meet the specificity
      requirement, fails for multiple other reasons, and is a manifestly
      improper attempt to litigate his breach of trust claims in two
      forums. ................................................................................................ 21

CONCLUSION ............................................................................................... 25

## Table of Authorities

### Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................... 7, 8

*Barber v. SMH (US), Inc,* 202 Mich.App 366  (1993)....................................................... 15

*Barnell v. Taubman Co.*, 203 Mich. App. 110 (1993)......................................................... 16

*Boyle v. Gen. Motors Corp.*, 468 Mich. 226 (2003) ...................................................... 12

*Bozzo v. Nanasy*,159 F.4th 1111 (6th Cir. 2025)............................................................. 8

*Calhoun Cnty. v. Blue Cross Blue Shield Michigan,* 297 Mich. App. 1 (2012) ...................... 19

*Cartwright v. Garner*, 751 F.3d 752 (6th Cir. 2014) ...............................................8, 21

*Citizens Ins. Co. of Am. v. Univ. Physician Grp.*, 319 Mich. App. 642 (2017).................... 13

*Cole v. Knoll, Inc.*, 984 F. Supp. 1117 (W.D. Mich. 1997)................................................ 15

*Cowdrey v. A T Transport,* 141 Mich. App 617 (1985)....................................................... 15

*Currithers v. FedEx Ground Package Sys., Inc.*, No. 04-cv-10055, 2012 WL
    458466 (E.D. Mich. Feb. 13, 2012)................................................................... 12

*Danto v. Charles C. Robbins, Inc.*, 250 Mich. 419 (1930) ...............................................13, 14

*Davidson v. Bugbee*, 227 Mich. App. 264 (1997) ......................................................... 20

*Deschane v. Klug*, 344 Mich. App. 744 (2022)............................................................ 13

*Ducharme v. Ducharme*, 305 Mich. App. 1 (2014) ......................................................... 21

*Ehman v. Libralter Plastics, Inc.*, 207 Mich. App. 43 (1994)............................................ 21

*Ferris v. Trinity Health Corp.*, 2006 WL 2271307 (Mich. Ct. App. Aug. 8,
    2006) ................................................................................................................... 9

*Foreman v. Foreman*, 266 Mich. App. 132 (2005) .................................................... 13

*Franzel v. Kerr Manufacturing Co.*, 234 Mich. App. 600 (1999)........................................ 9

*General Retirement Sys. v. UBS, AG*, 2012 WL 1278300 (E.D. Mich.)............................. 24

*Hi–Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330 (1976) .......................................... 14

*In re Beatrice Rottenberg Living Tr.*, 300 Mich. App. 339 (2013) ........................................... 25

*Johnson v. Johnson*, 157 F.4th 813 (6th Cir. 2025) ........................................................ 21, 22

*Kawecki ex rel. Marlowe v. Cnty. of Macomb*, 367 F. Supp. 2d 1137 (E.D. Mich. 2005) .............................................................................................................. 23

*Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941) ...................................................... 8

*Kukla v. Perry* 361 Mich. 311 (1960) .................................................................................... 19

*Landstar Express America, Inc. v. Nexteer Automotive Corporation*, 319 Mich. App. 192 (2017) ................................................................................................. 18

*Lyons v. Stovall*, 188 F.3d 327 (6th Cir. 1999) ................................................................. 8, 24

*Lytle v. Malady (On Rehearing)*, 458 Mich. 153 (1998) ............................................................. 9

*Manning v. Amerman*, 229 Mich. App. 608 (1998) .................................................................. 21

*Marrero v. McDonnell Douglas Capital Corp*, 200 Mich. App. 438 (1993) ........................... 16

*Marshall v. Marshall*, 547 U.S. 293 (2006) ............................................................................. 21

*Mayhall v. A.H. Pond Co.*, 129 Mich. App. 178 (1983) ........................................................ 12

*Mercurio v. Huntington Nat'l Bank*, 347 Mich. App. 662 (2023) ......................................... 24

*Merriweather v. Federal Home Loan Mortg. Corp.*, 2026 WL 86823 (E.D. Mich.) ...................................................................................................................... 24

*Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187 (2006) .............................. 17, 18

*Myerscough v. Michigan Conf. of United Methodist Church*, No. 22-cv-226, 2024 WL 6912553 (W.D. Mich. Apr. 10, 2024) ................................................................. 17

*People ex rel. Potter v. Michigan Bell Tel. Co.*, 246 Mich. 198 (1929) .................................... 19

*Romeo Inv. Ltd. v. Michigan Consol. Gas Co.*, No. 260320, 2007 WL 1264008 (Mich. Ct. App. May 1, 2007) ...................................................................................... 12

*Romine v. Compuserve Corp.,* 160 F.3d 337 (6th Cir. 1998) ................................................. 22

*Rowe v. Montgomery Ward & Co.*, 437 Mich. 627 (1991) ....................................................... 15

*Schippers v. SPX Corp,* 444 Mich. 107 (1993) ........................................................ 15

*Schroeder v. Schroeder*, No. 22-cv-11509, 2022 WL 3582483 (E.D. Mich. Aug. 19, 2022) ............................................................................... 17

*Tillman v. Great Lakes Truck Ctr., Inc.*, 277 Mich. App. 47 (2007) .................................... 20

*Touissant v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579 (1980) ................ 10, 11, 15

*Van Tassel v. McDonald Corp.*, 159 Mich App 745 (1987) .................................................. 13

*William Beaumont Hosp. v. Morgan Stanley & Co.*, No. 14-10404, 2016 WL 213028 (E.D. Mich. Jan. 19, 2016) ..................................................................... 12

*Zaremba Equip., Inc. v. Harco Nat'l Ins. Co.*, 280 Mich. App. 16 (2008) ................ 14, 15, 16

**Statutes**

M.C.L. § 600.5851 ............................................................................................... 20

M.C.L. § 700.7203(1) ............................................................................................. 23

M.C.L. § 700.7814 ................................................................................................ 24

MCL 600.5827 ............................................................................................... 12, 20

MCL 600.6013 ...................................................................................................... 21

**Rules**

Fed. R. Civ. P. 12(b)(1) ........................................................................................ 8

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 7

Fed. R. Civ. P. 17(a) ............................................................................................ 24

Fed. R. Civ. P. 9(b) ............................................................................................. 23

## STATEMENT OF ISSUES PRESENTED

1.  Whether Richard Mancini's breach of employment agreement claim should be dismissed because his own allegations establish that any alleged just-cause employment relationship ended with his 2017 termination and was never recreated through any subsequent agreement.

    | | |
    |---|---|
    | Plaintiffs-Counter-Defendants' Answer: | Yes. |
    | Defendants-Counter-Plaintiffs' Answer: | No. |

2.  Whether Richard Mancini's fraudulent-inducement claim should be dismissed because it is barred by the statute of limitations and because the alleged representations concern non-actionable promises of future conduct rather than past or present material facts.

    | | |
    |---|---|
    | Plaintiffs-Counter-Defendants' Answer: | Yes. |
    | Defendants-Counter-Plaintiffs' Answer: | No. |

3.  Whether Richard Mancini's promissory-estoppel claim should be dismissed because he fails to allege a clear and definite promise or legally sufficient reliance under Michigan law.

    | | |
    |---|---|
    | Plaintiffs-Counter-Defendants' Answer: | Yes. |
    | Defendants-Counter-Plaintiffs' Answer: | No. |

4.  Whether Richard Mancini's quantum meruit/unjust enrichment claim should be dismissed because he does not allege that any defendant "received and retained" a legally cognizable benefit or that Richard conferred any benefit independent of his ordinary employment duties.

    | | |
    |---|---|
    | Plaintiffs-Counter-Defendants' Answer: | Yes. |
    | Defendants-Counter-Plaintiffs' Answer: | No. |

5.  Whether Richard Mancini's and Richard Mancini Construction, Inc.'s (RMC) breach of contract claim related to an alleged contract between Ric-Man Construction, Inc. and RMC should be dismissed because the alleged contract is illegal and lacks mutuality based on Richard's own contention that RMC is an alter ego of Ric-Man.

Plaintiffs-Counter-Defendants' Answer:    Yes.
Defendants-Counter-Plaintiffs' Answer:    No.

6. Whether Richard Mancini's common-law and statutory conversion claims should be dismissed because his own allegations establish that the claims accrued many years ago and are barred by Michigan's three-year statute of limitations.

Plaintiffs-Counter-Defendants' Answer:    Yes.
Defendants-Counter-Plaintiffs' Answer:    No.

7. Whether Richard's silent fraud claim should be dismissed under the probate exception or *Colorado River* abstention because Richard is already litigating his breach of trust claims in Macomb County Probate Court; or alternatively because Richard has not alleged fraud with particularity, the grantor of a trust has no duty of disclosure, and Richard is not a real party in interest.

Plaintiffs-Counter-Defendants' Answer:    Yes.
Defendants-Counter-Plaintiffs' Answer:    No.

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

## I.

*Franzel v. Kerr Manufacturing Co.*, 234 Mich App 600 (1999) (employee rehired after termination becomes an at-will employee absent a renewed just-cause agreement)

*Touissant v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579 (1980) (termination without just cause may give rise to breach of contract damages, but the termination still severs the employment relationship)

## II.

*Boyle v. General Motors Corp.*, 468 Mich 226 (2003) (fraud claims accrue when the wrong is done, not when discovered)

*Hi-Way Motor Co. v. International Harvester Co.*, 398 Mich 330 (1976) (future promises not actionable absent contemporaneous proof that defendant lacked intent to perform)

## III.

*Morris Pumps v. Centerline Piping, Inc.*, 273 Mich App 187 (2006) (unjust enrichment requires receipt and retention of benefit independent of contractual performance)

## IV.

*People ex rel. Potter v. Michigan Bell Tel. Co.*, 246 Mich. 198 (1929) (an entity cannot contract with its alter ego)

## V.

*Davidson v. Bugbee*, 227 Mich App 264 (1997) (conversion claims accrue when wrongful dominion over the property is first exercised)

## VI.

*Johnson v. Johnson*, 157 F.4th 813 (6th Cir. 2025) (probate exception precludes federal courts from disposing of property that is in the custody of a state probate court)

*Romine v. Compuserve Corp.,* 160 F.3d 337 (6th Cir. 1998) (federal court may abstain from cases involving the contemporaneous exercise of jurisdiction by state and federal courts)

Fed. R. Civ. P. 9(b) (a party must state with particularity the circumstances constituting fraud)

*Mercurio v. Huntington Nat'l Bank*, 347 Mich. App. 662 (2023) (grantor of trust owes no duty of disclosure to beneficiary)

Fed. R. Civ. P. 17(a) (an action must be prosecuted in the name of the real party in interest)

## INTRODUCTION

After filing a scattershot ten-count Counterclaim, Counter-Plaintiffs Richard Mancini ("Richard") and Richard Mancini Construction, Inc. ("RMC") have filed an Amended Counterclaim with fewer counts but no improvement of their legal position.

The most notable addition to Richard's new pleading is an attempt to inject, under the guise of a "silent fraud" claim against his parents, breach of trust claims he wrongfully attempted to litigate in Florida for over a year and is <u>currently litigating</u> before Macomb County Probate Court Judge Sandra Harrison. The array of defects with this claim, and the obvious impropriety of filing it here, typifies the frivolous and legally insufficient nature of the entire Amended Counterclaim.

## BACKGROUND

### A. Richard makes the same breach of trust allegations he is already litigating in Macomb County Probate Court, with no specificity.

Richard begins his Amended Counterclaim by alleging that his father, Steven Mancini, "manipulates" unspecified trusts "for his own financial gain at the expense of his children, including Richard…" (Am. Countercl. ¶10.) Without identifying any allegedly wrongful transactions, Richard alleges that the unspecified trusts "are used by Steven as part of an elaborate shell game to increase his personal wealth and avoid taxes." (*Id.* ¶11.) Richard claims "Lisa follows Steven's guidance" and that this has resulted in unspecified "multiple serious breaches of trust and harm to beneficiaries like Richard." (*Id.* ¶13.) Richard alleges his damages are being calculated in other, also

unspecified, "Trust Litigation." (*Id.* ¶15.) Richard later added that the alleged "scheme" involved unspecified loans by "real estate owned by the children's trusts" and "proceeds improperly transferred and injected into [Ric-Man]." (*Id.* ¶90.)

Richard relies on these allegations as the basis for a new silent fraud claim (Count V). He alleges that "Lisa, as Trustee" and "Steven, as grantor" have a "legal obligation to notify the beneficiaries, such as Richard, if any of the trust assets are lost or stolen." (*Id.* ¶142.) He alleges that "substantial assets in Mancini Trusts have been removed and manipulated by Steven with the assistance of Lisa." (*Id.* ¶143.) Count V provides no additional details, but Richard claims that Steven and Lisa are nevertheless liable for silent fraud because they "failed to notify the beneficiaries of the Mancini Trusts of any of the losses to or manipulations of the Mancini Trust assets." (*Id.* ¶145.)

Richard leaves out that he is actively pursuing multiple petitions before Judge Sandra Harrison of the Macomb County Probate Court on his breach of trust claims. In that action, he alleges that Lisa "ced[ed] complete control" of trust assets to Steven and allowed Steven to siphon money from trust-owned businesses. **Ex. A1-5**. In fact, Judge Harrison exerted "exclusive jurisdiction" over his trust claims and placed the relevant trusts under her supervision almost a year ago. **Ex. B**, July 29, 2025 Order.[1]

---

[1] In his Amended Complaint, Richard refers to "real estate owned by the children's trusts" (*id.* ¶90), but in Macomb County, Richard made clear that he is complaining about transactions **at the entity level below the trusts**, alleging the trusts "own a percentage of the various Mancini family businesses" and that "the profits from these businesses are collectively siphoned into bank accounts titled to Steven, Lisa, and Ric-Man Construction." See e.g. **Ex. A4**, ¶¶21-23.

Richard also leaves out that he attempted to pursue his breach of trust claims in the wrong jurisdiction, Florida, for over a year before they were dismissed in March. **Ex. C**, Register of Actions, Case No. 50-2024-CA-011586, Fifteenth Judicial Circuit.

Richard also fails to mention Judge Harrison has already admonished him for trying to litigate his trust claims in the wrong jurisdiction (that time, Florida):

> I don't think I can order him to not file something in a different jurisdiction, but what I will say on the record is that I have the ability to assess attorney fees against him in this litigation and I would be willing to do that if he's going to continue to try to get answers from different judges and different venues and different courts as to trusts that should be administered here in Macomb County. **Ex. D**, March 9, 2026 Tr. at 27.

## B. Richard alleges he was induced to leave his prior employment with vague promises (made in 2016) about the future.

The bulk of the Counterclaim relates to Richard's contention that he joined various Mancini companies in December 2016 after receiving oral assurances from his father, Steven, in October 2016 that he would have "lifetime employment" terminable only for cause. (Am. Countercl. ¶¶55, 60, 151.) Those assurances, he says, were later confirmed in a June 29, 2017, email stating that Richard had been told in 2016 he "would be employed at Ric-Man as long as [he] wanted" and "would not be discharged from employment with Ric-Man unless there were good grounds to do so." (*Id.* ¶67.)

In the midst of a dispute among Ric-Man's owners (Steven and his two brothers),

- 3 -

on August 15, 2017, Richard was terminated by Ric-Man (RCI) and the other Mancini companies. (*Id.* ¶¶73-74). Richard's original Counterclaim alleged that he was later "restored to his positions at RCI, RDI, and all other Mancini companies." (Countercl. ¶79.) He drops this language in his Amended Counterclaim, but he continues to acknowledge that "No superseding employment agreement involving Richard was executed" when he returned to work. (Am. Countercl. ¶77.)[2]

In Count I, Richard asserts a claim for Breach of Employment Agreement based on his subsequent termination in 2024, which he purports to file "Against Steven and RCI," while also mentioning Mancini Enterprises. Richard also asserts a host of alternative claims revolving around the alleged lifetime employment promise:

In Count VI, Richard alleges that <u>in 2016</u> Steven fraudulently induced him to leave his "lucrative position at a prestigious Miami investment firm" by "stating that he would make Richard his successor." (*Id.* ¶¶53, 55, 59, 148.) Richard alleges that Steven knew this promise was false when he made it <u>in 2016</u>, at least conditionally, because "he planned to control Richard's conduct by denying Richard the succession if Richard

---

[2] Richard's Amended Counterclaim discusses prior litigation between Steven and his brothers, including his uncle's arbitration deposition and settlement of the dispute. (*Id.* ¶¶74, 86.) Richard intentionally omits that he was a claimant in the arbitration, that he brought a wrongful termination claim against the same entities he sues here for the August 2017 termination, and that in a June 10, 2019 settlement agreement, he gave a general release of all parties he is suing here (Ric-Man, Mancini Enterprises, and his parents). Counter-Defendants intend to bring a motion on that basis in the future in the event any of Richard's claims survive this initial motion to dismiss.

acted contrary to Steven's demands or interests." (*Id.* ¶149.) Richard alleges he "reasonably relied on Steven's statement," made "at the same time [Steven] entered into a contract with Richard for lifetime employment." (*Id.* ¶151.) In Count VII, Richard alleges that the same allegations support a Promissory Estoppel claim.

In Count VIII, Richard asserts an Unjust Enrichment/Quantum Meruit claim. Richard avers that his father benefitted from "Richard's commitment to ensuring (sic) RCI and its alter egos maintain the level and quality of work that has led to RCI's past successes" and Richard's "work as a 'fixer.'" (*Id.* ¶161.) Richard alleges that the benefits conferred on Steven through Richard's work are RCI's "likely" avoidance of bankruptcy in 2019-20 and "the company's future viability and its ability to relocate its headquarters to Florida and further develop the Florida market, which, over the next 10 or 20 years, will generate hundreds of millions of dollars." (*Id.* at ¶¶164-65.) Richard accuses RCI of breaching an illegal contract with RMC while also alleging that RCI and RMC are the same entity.

In Count II, Richard asserts that Ric-Man Construction, Inc. (RCI), his father's company, and Richard Mancini Construction, Inc. (RMC), Richard's company, "entered into a valid and binding agreement supported by mutual consideration." (*Id.* ¶122.) Richard alleges RCI agreed to receive payments from unspecified third parties on behalf of RMC and remit unspecified funds to RMC. (*Id.*) Richard alleges that RCI "refused to transfer funds" and is in "material and ongoing breach." (*Id.* ¶123.)

In the original Counterclaim, which included this claim, no contract between RCI

- 5 -

and RMC was even mentioned in Richard's lengthy "Factual Allegations" section, and Richard did not articulate any of its terms or explain what terms were supposedly breached. In his Amended Counterclaim, Richard attempts to "fix" this by alleging that RCI and RMC are really one party that entered into an illegal contract with itself.

Richard spends four pages of his Amended Counterclaim (pages 7-10) alleging that Richard's own company, RMC, is an alter ego of his father's company, RCI. Richard alleges that "[f]rom 2018 to present RMC has and continues to serve as an alter ego of RCI in Florida" and that "[e]xcept for the names of the two companies, there is virtually no way to distinguish between them" (*Id.* ¶¶31, 32.). In his original Counterclaim, Richard alleged that RMC was formed "to defraud the Michigan union pension program…" (Countercl. ¶150.) In his Amended Counterclaim, he retracts that reckless allegation but contends that RMC was used by RCI to dishonestly shift expenses to RMC and improve RCI's balance sheet. (Am. Countercl. ¶36.). Richard alleges that "RCI and RMC entered into an agreement under which **RMC agreed to perform work in the state of Florida as an alter ego of RCI**"; that RMC was owed 97.5% of the revenue from this work; and that "[i]n approximately August 2024, RCI breached that agreement by converting RCI's 97.5% of more than $5 million in additional revenue…" (*Id.* ¶¶33, 34.)

## C. Richard makes the contradictory allegations that funds were converted long ago and that he was promised a higher rate of interest.

In Counts III and IV, Richard asserts claims for Common Law and Statutory

Conversion. Richard alleges his parents converted "into [their] personal accounts" annual $10,000 gifts he received between 1989 – 2014, for a total of $250,000. (*Id.* at ¶¶17-18, 44.) He alleges that "[w]hen Richard was a minor [before 2007], Steven and Lisa used the funds to purchase several private aircraft and kept doing so throughout his lifetime." (*Id.* ¶19.) Richard alleges he "demanded the money every year to purchase a residence starting in 2010 up to the present," and that "after Richard discovered the loan and demanded the return of the money…Steven and Lisa sent *some* of the funds to Richard's Miami residence in 2015 and again in 2024." (*Id.* ¶¶23, 24.)

While claiming his funds were stolen, Richard also contends he was promised that he would receive the "maximum interest rate allowed in Florida, 18 percent." (*Id.* ¶21.) Based on these contradictory allegations, Richard contends that, from the alleged $250,000 in gifts (which he alleges were partially repaid in 2015 and 2024), he is owed $63 million — an amount he calculated by taking his mother's alleged promise of 18% interest, compounding it, and multiplying the total by three. (*Id.* ¶140.)

## LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the pleadings. To survive such a motion, a complaint (or counterclaim) must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible only when the pleaded facts permit the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* "Threadbare recitals of the elements

- 7 -

of a cause of action, supported by mere conclusory statements," will not withstand dismissal. *Id.* A claim is also subject to dismissal under Fed. R. Civ. P. 12(b)(6) if the complaint's allegations "affirmatively show that the claim is time-barred." *Bozzo v. Nanasy*, 159 F.4th 1111, 1116 (6th Cir. 2025).

"Fed. R. Civ. P. 12(b)(1) provides for the dismissal of an action for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). "In the case of a factual attack, a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Id.* at 759-60. "[F]ederal courts may take judicial notice of proceedings in other courts of record." *Lyons v. Stovall*, 188 F.3d 327, 333 n 3 (6th Cir. 1999). The claims in this diversity action are governed by Michigan law. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496–97 (1941).

## ARGUMENT

**I.     Richard's claim for breach of employment agreement (Count I) fails because the alleged prior just-cause employment relationship was extinguished and not recreated.**

Count I should be dismissed because Richard's own pleading forecloses the existence of any enforceable just-cause employment agreement at the time of his 2024 termination. Even accepting the allegations as true, Richard admits (1) his alleged just cause employment was terminated in August 2017, and (2) no new or superseding employment agreement was ever formed following his later reinstatement. Under

settled Michigan law, those admissions are fatal.

The analysis begins with Michigan's strong presumption that employment is at-will. *Lytle v. Malady (On Rehearing)*, 458 Mich. 153, 163 (1998). Because of that presumption, it is blackletter law that once employment ends, any subsequent employment is a new contractual relationship and not a continuation of the old one. The at-will presumption applies unless the employee pleads facts establishing a new, clear, and unequivocal just-cause agreement.

In *Franzel v. Kerr Manufacturing Co.*, the plaintiff enjoyed just-cause protection, was terminated, and was later reinstated. 234 Mich. App. 600, 603-04 (1999). The court held that because the reinstatement agreement did not include just-cause terms, "upon her reemployment, plaintiff was again an at-will employee." *Id.* at 612-13. Similarly, in *Ferris v. Trinity Health Corp.*, 2006 WL 2271307 (Mich. Ct. App. Aug. 8, 2006), the court rejected a claim that prior just-cause protections carried forward into a new employment relationship following a break in employment. The court held that the plaintiff "failed to demonstrate that she was promised that her just-cause employment status would continue" and emphasized that a new employer (or new employment relationship) is not bound absent proof of assent to those terms. *Id.* at *2–3.

Richard's allegations place him squarely within this rule of law. Richard admits he was terminated "on August 15, 2017," notwithstanding his attempt to characterize

the termination as wrongful or disputed (Am. Countercl. ¶¶73-74.)[3] Richard has

tactically dropped the allegation from his original Counterclaim that he "was restored

to his positions at RCI, RDI, and all other Mancini companies," but he continues to

acknowledge in his Amended Counterclaim that "[n]o superseding employment

agreement involving Richard was executed…" when he returned to employment

(Countercl. ¶79, Am. Countercl. ¶77.) Therefore, under his own allegations, he was an

at will employee when he was terminated again in 2024.

Richard's attempt to salvage this flawed claim depends on his strained argument

that if he contested the 2017 termination, it did not happen. But under the *Touissant v.*

*Blue Cross & Blue Shield of Michigan*, 408 Mich. 579 (1980) framework that has governed

just-cause employment claims in Michigan for over four decades, that is flat wrong. A

termination without just cause may give rise to breach of contract damages, but the

termination still severs the employment relationship.

In *Touissant*, the Michigan Supreme Court held that an employee with a just cause

agreement who is dismissed without just cause "may maintain an action for wrongful

discharge." *Id.* at 610. The employee's remedy is entirely contractual: the just-cause

obligation is a term of the employment contract, and its breach gives the employee a

cause of action for damages. The remedy does not void the termination. Accordingly,

---

[3] Again, Richard neglects to mention that he filed and released a wrongful termination
claim over the 2017 termination. See fn. 2, *supra.*

when it remanded the case, the Supreme Court directed the trial court "to reinstate the verdict" – meaning the monetary judgment in Touissant's favor – not to nullify the termination or to reinstate Touissant to his job. *Id.* at 625. *Touissant* and its progeny establish a clear rule: just-cause protection may give rise to a claim for damages, but it is not a limit on the employer's power or ability to terminate.

Here, Richard concedes that he was terminated in August 2017 and that no new contract of employment was agreed to when he returned to work. (Am. Countercl. ¶¶73-74, 77.)  That is fatal to his claim under *Franzel* and *Ferris*. The fact that Richard contested the August 2017 termination does not mean the termination did not occur or that he later acquired just cause protection when he returned to work.[4] Therefore, Count I must be dismissed.

## II.     Richard's employment-adjacent claims fail for a host of reasons.

### A. Richard's fraudulent inducement claim (Count VI) is barred by the statute of limitations and does not plead actionable fraud.

Richard's fraudulent inducement claim fails as a matter of law for at least two independent reasons. First, the claim is clearly barred under Michigan's six-year statute of limitations governing fraud claims. Second, the allegations do not state a claim for fraud because they are based on non-actionable, vague promises of future conduct.

---

[4] Richard's Amended Counterclaim includes a long diatribe intended to prove that Richard returned to employment after his August 2017 termination. (*Id.* ¶¶102-112). This has no bearing on this motion, as Counter-Defendants accept, for purposes of the motion, Richard's allegation that he returned to employment.

## 1.  The fraudulent inducement claim is clearly time-barred.

Under Michigan law, a claim for fraudulent inducement accrues "when the wrong was done," not when the plaintiff discovers the alleged fraud. *Boyle v. Gen. Motors Corp.*, 468 Mich. 226, 232 (2003); M.C.L. § 600.5827 ("the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results"). Thus, the limitations period begins to run at the time the allegedly false representation induces the plaintiff to act. *Romeo Inv. Ltd. v. Michigan Consol. Gas Co.*, No. 260320, 2007 WL 1264008 at *6 (Mich. Ct. App. May 1, 2007) (claim for fraudulent inducement of contract barred because claim accrued when the contract was executed); *Currithers v. FedEx Ground Package Sys., Inc.*, No. 04-cv-10055, 2012 WL 458466 at *5 (E.D. Mich. Feb. 13, 2012) ("Where a plaintiff has alleged being fraudulently induced to enter into a contract, the alleged wrong was committed and the cause of action accrued when the plaintiff entered into the contract."); *William Beaumont Hosp. v. Morgan Stanley & Co.*, No. 14-10404, 2016 WL 213028 at *2 (E.D. Mich. Jan. 19, 2016) (same); see also *Mayhall v. A.H. Pond Co.*, 129 Mich. App. 178, 184 (1983) (fraud claim accrues when plaintiff is induced to transfer property).

Richard alleges that Steven Mancini made the purported misrepresentations that he "would make Richard his successor" and that "Richard would be his successor throughout Richard's life" (Am. Countercl., ¶¶148, 151) <u>in 2016</u>, "at the same time he entered into a contract with Richard for lifetime employment." (*Id.* ¶¶53, 55, 59, 151.) Richard alleges he relied on the promise by giving up his career in finance and accepting

employment, which began on December 12, 2016. (*Id.* ¶¶53-55, 60.)

These allegations establish that Richard's fraudulent inducement claim accrued, at the very latest, in December 2016, when Richard acted in reliance on the alleged fraudulent representations and began his employment. (*Id.* ¶60.) Because the statute of limitations for fraud is six years, see *Citizens Ins. Co. of Am. v. Univ. Physician Grp.*, 319 Mich. App. 642, 651 (2017), any claim had to be brought by December 2022, at the latest. Richard did not assert this claim until 2026. Accordingly, Count VI is time-barred.

### 2.  Richard does not state a claim for fraudulent inducement.

Count VI also fails because to state a claim for fraudulent inducement because he fails to allege a misrepresentation of a past or existing material fact. *Foreman v. Foreman*, 266 Mich. App. 132, 143 (2005). Statements about future conduct are not actionable as fraud. *Id.*; *Danto v. Charles C. Robbins, Inc.*, 250 Mich. 419, 425 (1930); *Van Tassel v. McDonald Corp.*, 159 Mich. App. 745, 751, 752-53 (1987) ("you [will] come and work for me in Ann Arbor" non-actionable promise about future conduct); *Deschane v. Klug*, 344 Mich. App. 744, 751-52 (2022) (alleged promises of homeowner to boyfriend "she *would* put [him] on the title" and that he "*would be* joint owner" not actionable as fraud because did not relate to past or existing facts) (emphasis in original).

Here, Richard alleges his father promised that Richard "would make Richard his successor" at some unspecified point in the future (Am. Countercl. ¶148.) This statement about future events is not actionable as fraud under Michigan law.

Richard recognizes the deficiency of this claim and tries to salvage it with the

- 13 -

conclusory assertion that: "[w]hen Steven made this statement, he knew that it was false, as he planned to control Richard's conduct by denying Richard the succession if Richard acted contrary to Steven's demands or interests." (*Id.* ¶149.) There is a narrow exception under Michigan law where a promise of future conduct may be actionable if the plaintiff pleads facts showing that, "at the very time of making the representations," the defendant had no intention of performing. *Danto*, 250 Mich. at 425; *Hi–Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336–38 (1976). But that exception requires specific factual allegations of contemporaneous intent—not conclusory assertions made with the benefit of hindsight. *Id.* Richard makes no specific allegations.

Further, his lone, conclusory allegation is conditional and, on its face, proves that Steven could not have had fraudulent intent at the time of making the alleged promise. Richard alleges Steven knew he would not perform "*if* Richard acted contrary to Steven's demands"—since Steven could not have known *whether* Richard would do that "at the very time" of the promise, Richard's flawed allegation fails on its own terms.

### B. Richard does not state a claim for promissory estoppel (Count VII).

Promissory estoppel applies only in narrow circumstances where a person reasonably relies on a clear and definite promise in the absence of an enforceable contract. *Zaremba Equip., Inc. v. Harco Nat'l Ins. Co.*, 280 Mich. App. 16, 41 (2008). Here, Richard's own allegations foreclose the claim because (1) he fails to identify any definite and clear promise sufficient to overcome Michigan's at-will presumption; and (2) his alleged reliance—leaving a job and relocating—is legally insufficient as a matter of law.

- 14 -

### 1.  Richard does not allege a clear and definite promise.

Richard fails to plead the essential element of a "definite and clear" promise. *Id.* He alleges that in 2016, Steven promised "to Richard to hand over leadership of the company, to be completed within a reasonable time after the Mancini Brothers divided up the company." (Am. Countercl. ¶155.) "Michigan courts require a high level of specificity in this area, just as they do in the area of just-cause employment contracts." *Cole v. Knoll, Inc.*, 984 F. Supp. 1117, 1133 (W.D. Mich. 1997).

Generalized statements about "lifetime" employment or employment "as long as [the employee] wants" or obtaining leadership "within a reasonable time" are not clear and definite. *Rowe v. Montgomery Ward & Co.*, 437 Mich. 627, 643-44 (1991); see e.g. *Schippers v. SPX Corp,* 444 Mich. 107, 120 (1993) (as long as Hy-lift has a truck, you will be the driver); *Touissant,* 408 Mich. 579, 597 (1980) (as long as I did my job); *Barber v. SMH (US), Inc,* 202 Mich. App. 366, 376 (1993) (as long as I was profitable and doing the job); *Cowdrey v. A. T. Transport,* 141 Mich. App. 617, 619-20 (1985) (as long as you do your job and A & T Transport is in business).

The alleged promises here are precisely the type of indefinite, aspirational statements that Michigan courts reject. According to Richard, he was promised he would be Steven's successor at some undefined point in the future; would be employed by Ric-Man "for as long as Richard would like"; "would replace Steven's brothers…as Steven's primary partner in the family business"; "would become the principal and owner of the family conglomerate"; and that Steven would "hand over leadership of

- 15 -

the company" within a "reasonable time" (Am. Countercl. ¶¶55, 57, 148, 155-56.) These statements are not clear, definite, or enforceable promises. They are inherently contingent and forward-looking.[5]

### 2. Richard's alleged reliance is legally insufficient.

Promissory estoppel also requires "reasonable" reliance. *Zaremba Equip., Inc.*, 280 Mich. App. at 41. Richard's allegations do not meet that standard as a matter of law. He alleges that he relied on the purported promises by leaving a "lucrative career in financial services." (Am. Countercl. ¶¶54, 56, 156.) But Michigan courts have repeatedly held that leaving prior employment is not sufficient to establish the type of reliance required for promissory estoppel. In *Marrero v. McDonnell Douglas Capital Corp*, the court held that resigning from a prior job and relocating to a new city are "customary and necessary incidents of changing jobs" and therefore insufficient to establish reliance as a matter of law. 200 Mich. App. 438, 443 (1993); see also *Barnell v. Taubman Co.*, 203 Mich. App. 110, 122 (1993). Richard alleges nothing more. He does not plead any extraordinary or unconscionable change in position beyond the ordinary consequences of accepting new employment. Under controlling Michigan law, that is insufficient to support a

---

[5] So lost is Richard in his own contradictions that he alleges Steven made these promises in October 2016, while Steven's brothers were still Steven's "primary partners" in Ric-Man (*id.* ¶57); that the brothers "welcomed Richard back into the fold" (*id.* ¶61); and that the brothers' relationship did not deteriorate until "early 2017," long after Steven's alleged promises. (*Id.* ¶62) Richard does not explain how he could have reasonably relied on a supposed October 2016 promise to become Steven's "successor" or replace Steven's "primary partners" without the involvement of Steven's "primary partners."

- 16 -

promissory estoppel claim. Therefore, Count VII should be dismissed.

### III. Richard has not stated a claim for Quantum Meruit/Unjust Enrichment (Count VIII)

In Count VIII, Richard asserts a quantum meruit theory that fails to state a claim on multiple grounds. First, Richard improperly asserts this claim against his father, Steven, and Mancini Enterprises based on benefits Richard allegedly conferred to RCI (Am. Countercl. ¶¶161, 164-65.) Quantum meruit requires "the receipt of a benefit by the defendant." *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187, 195 (2006).

Second, Richard alleges quantum meruit based on (1) his predictions of future events (i.e., "the company's future viability," its ability to relocate to Florida in the future, and his prediction "over the next 10 or 20 years, [this] will generate hundreds of millions of dollars") and (2) his speculation that "[w]ithout Richard's participation, the company would likely have been forced into bankruptcy in 2019-2020." (*Id.* ¶¶164-66.)

But a quantum meruit theory must be based on benefits "received and retained" and may not be based on future predictions or speculation about a bankruptcy avoided in the past. *Morris Pumps*, 273 Mich. App. at 196 (quantum meruit benefits must be "received and retained"); *Myerscough v. Michigan Conf. of United Methodist Church*, No. 22-cv-226, 2024 WL 6912553 at *13 (W.D. Mich. Apr. 10, 2024) (unjust enrichment claim that did not "raise a right to relief above the speculative level" properly dismissed on the pleadings); *cf. Schroeder v. Schroeder*, No. 22-cv-11509, 2022 WL 3582483 at *2 (E.D. Mich. Aug. 19, 2022) (dismissal on pleadings proper where complaint alleges only

- 17 -

speculative and immeasurable damages).

Third, a quantum meruit/unjust enrichment claim requires allegations of receipt of "an independent benefit from the plaintiff's contractual services." *Morris Pumps, supra* at 196; *Landstar Express America, Inc. v. Nexteer Automotive Corporation*, 319 Mich. App. 192, 205-06 (2017) (rejecting unjust enrichment claim because the benefit conferred was nothing more than what was contemplated by the parties' agreement).

In his original Counterclaim, Richard alleged that, as an employee, he was "put in charge of and successfully completed the development of a strategy to save the company." (Countercl. ¶57.) While he deletes that allegation in his Amended Counterclaim in an attempt to avoid dismissal of this claim, he still asserts that he was an employee with "significant responsibilities" and that he "was the Chief Financial Officer, General Manager of the Florida Division, and Project Manager of RCI" and the "President of Mancini Enterprises." (Am. Countercl. ¶¶ 84, 111.) He cannot recover in quantum meruit/unjust enrichment for services which, based on his own allegations, he performed within the scope of his duties as an employee.

## IV. The claim for breach of a contract between Ric-Man and RMC (Count II) fails because the alleged contract is illegal and lacks mutuality.

The Counter-Plaintiffs spend a large chunk of the Amended Counterclaim alleging that RMC is an alter ego of RCI (*id.* at pages 7-10) and then assert that these two entities (which under their allegations are really one entity) contracted for RMC "to perform work in the state of Florida as an alter ego of RCI" and that RCI failed to make

- 18 -

payments due under this "contract." (*Id.* ¶¶33, 34.) Counter-Plaintiffs originally alleged this arrangement was set up to defraud a pension fund (Countercl. ¶150) and now contend it was set up to dishonestly shift expenses to RMC and improve RCI's balance sheet. (Am. Countercl. ¶36.) Richard and RMC allege RMC earned over $20 million by falsely holding itself out as a separate company. (*Id.* ¶34.)

This nonsensical claim fails as a matter of law. To state only the most obvious points, courts do not enforce illegal contracts, and a party cannot contract with itself.

In *People ex rel. Potter v. Michigan Bell Tel. Co.*, 246 Mich. 198 (1929), Michigan Bell purported to enter into an agreement with American Telephone Company, which the Supreme Court found was an alter ego of Michigan Bell that was being used "to avoid full investigation and control by the Public Utilities Commission of the state…" *Id.* at 204-05. In a holding that disposes of Count II based on Plaintiffs' own alter ego allegations, the Court held: "The difference in entity going out, the contract goes out with it. The American Company cannot contract with itself." *Id.* at 205. See also *Calhoun Cnty. v. Blue Cross Blue Shield Michigan,* 297 Mich. App. 1, 13 (2012) (valid contract requires "mutuality" and "where mutual assent does not exist, a contract does not exist"); *Kukla v. Perry* 361 Mich. 311, 324 (1960) ("where an illegal contract is involved, the court will not enforce it or grant relief thereunder…").

**V.    Richard's conversion claims (Counts III & IV) are barred by the statute of limitations and fail to state a proper damages claim.**

Richard's common-law and statutory conversion claims are governed by a three-

year statute of limitations. *Tillman v. Great Lakes Truck Ctr., Inc.*, 277 Mich. App. 47, 49 (2007). In Michigan, a claim accrues "at the time the wrong upon which the claim is based was done regardless of the time when damage results." M.C.L. § 600.5827. A conversion claim accrues when the defendant first exercises wrongful dominion over the property. *Davidson v. Bugbee*, 227 Mich. App. 264, 269 (1997).

Even allowing for the fact that Richard reached the age of eighteen in 2007, and assuming, *arguendo*, that his claim was tolled until a year later under M.C.L. § 600.5851, Richard's conversion claims have been barred by the statute of limitations for many years based on his own allegations:

- Richard alleges his parents converted "into [their] personal accounts" annual $10,000 gifts he received between 1989 – 2014, until age 25, for a total of $250,000. (Am. Countercl. ¶¶17-18.)

- Richard alleges he has demanded repayment of the money every year since 2010 (*id.* at ¶ 23) and that his parents repaid "*some*" of the funds in 2015 (*id.* at ¶ 24). Richard asserts that the 2015 payment left a "significant 'overdue balance.'" (*Id.*)

Based on Richard's own allegations, the acts of conversion began when he was born in 1989 and ended in 2014 (and were the subject of Richard's demands and partial payment from 2010 forward). Thus, Richard's conversion claims have been long since barred by the three-year statute of limitations.

While these claims should be dismissed in their entirety, Richard's obscene $63 million damages theory (related to the alleged $250,000 in gifts, which Richard admits receiving payment on in 2015 and 2024) deserves brief comment. Richard cannot

simultaneously assert conversion (that his funds were stolen), that his mother "agreed" to pay 18% interest, and that "[a]t no point did Richard agree to lend the gifted funds…" (*Id.* ¶¶18, 21, 26) Conversion claims are not subject to alleged "agreement;" they are subject to the statutory judgment interest rate, which is nowhere near 18%. M.C.L. § 600.6013; *Ehman v. Libralter Plastics, Inc.*, 207 Mich. App. 43, 45 (1994).

**VI.** **Richard's silent fraud claim does not meet the specificity requirement, fails for multiple other reasons, and is a manifestly improper attempt to litigate his breach of trust claims in two forums.**

Richard's silent fraud claim proves the adage that it is easier to make a mess than to clean one up. There are a plethora of reasons for the Court to dismiss this procedurally abusive claim.  As an initial matter, this Court should defer to the ongoing trust proceedings in Macomb County Probate Court.

First, the probate exception to federal subject matter jurisdiction precludes federal courts from "disposing of property that is in the custody of a state probate court" *Marshall v. Marshall*, 547 U.S. 293, 296 (2006). See *Johnson v. Johnson*, 157 F.4th 813, 819 (6th Cir. 2025) (probate exception applies to *quasi in rem* actions). Richard is claiming in his capacity as a trust beneficiary that trust-related duties were breached. (Am. Countercl. ¶¶13, 142) Notwithstanding Richard's "silent fraud" label, this is a *quasi in rem* claim relating to trust administration. See *Manning v. Amerman*, 229 Mich. App. 608, 613 (1998)(confirming probate court jurisdiction notwithstanding tort labels); *Ducharme v. Ducharme*, 305 Mich. App. 1, 5-7 (2014)(fraud label irrelevant to jurisdiction); *Cartwright,* 751 F.3d at 762 (trust administration suits are *quasi in rem*).

- 21 -

Federal courts decline to hear such claims when a party "has asked a federal court to elbow its way into an ongoing fight over a property or a person in another court's control." *Johnson,* 157 F.4th at 819. Richard has asked this Court to do just that. The Macomb County Probate Court asserted exclusive jurisdiction over Richard's trust administration claims and took supervision of the relevant trusts almost a year ago. **Ex. B**. This Court should decline to "elbow its way in" to an ongoing fight over property in the Macomb Probate Court's control.

Second, alternatively, the Court may dismiss or stay this claim under the *Colorado River* abstention doctrine. Under *Colorado River,* "considerations of judicial economy and federal-state comity may justify abstention in situations involving the contemporaneous exercise of jurisdiction by state and federal courts." *Romine v. Compuserve Corp.,* 160 F.3d 337, 339 (6th Cir. 1998) (citation omitted). The Macomb Probate proceeding and this claim clearly meet the parallelism requirement. *Id.* Compare **Ex. A1-5** and the Amended Counterclaim at ¶¶ 9-15, 90-91, Count V. Therefore, the Court should apply the *Colorado River* factors. *Romine, supra,* at 341.[6]

Here, the Macomb Probate Court exercised exclusive jurisdiction over Richard's

---

[6] The factors are: "(1) whether the state court has assumed jurisdiction over any *res* or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; and (4) the order in which jurisdiction was obtained" and "(5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction." *Romine, supra,* at 340–41 (citations omitted). The "paramount" factor in *Colorado River* is avoidance of piecemeal, duplicative litigation. *Id.* at 341.

breach of trust claims and took over supervision of the relevant trusts almost a year ago, **Ex. B**, and it was *Richard* who elected to file his breach of trust claims there first. The governing law is Michigan. Discovery in the state case has been open since January. **Ex. E**, January 6, 2026 Order. Richard filed his Amended Counterclaim two weeks ago. The state probate court action can be expected to protect Richard's rights because he is raising breach of trust claims as a trust beneficiary and state probate courts have exclusive jurisdiction over such claims under Michigan law. M.C.L. § 700.7203(1). With respect to the most important *Colorado River* factor, piecemeal litigation and wasteful duplication would obviously result from adjudication of this claim in federal court in light of the ongoing litigation of Richard's breach of trust claims in state court.

In a similar case, choosing to exercise *Colorado River* abstention, the Eastern District of Michigan held that "The Michigan Legislature has enacted a detailed scheme for regulating the administration of trusts, estates, and conservatorships. In addition, the Michigan probate courts have developed considerable expertise in overseeing the performance of fiduciaries and reviewing their accountings. This state system has already been engaged in this case…" *Kawecki ex rel. Marlowe v. Cnty. of Macomb*, 367 F. Supp. 2d 1137, 1149 (E.D. Mich. 2005).

If the Court considers the merits of Richard's silent fraud claim, it can pick any one of three reasons to dismiss it. First, the silent fraud claim does not remotely satisfy Fed. R. Civ. P. 9(b), which requires parties to "state with particularity the circumstances constituting fraud..." See *Merriweather v. Federal Home Loan Mortg. Corp.*, 2026 WL 86823

- 23 -

*4 (E.D. Mich.) (silent fraud claim "required to be pleaded with specificity"); *General Retirement Sys. v. UBS, AG*, 2012 WL 1278300, *7 (E.D. Mich.) (dismissing silent fraud count because it did not identify loans allegedly dumped, when the decision was made, or who made the decision). Here, Richard alleges "breaches of trust" but does not identify the trusts, the transactions, when they occurred, or what entities were involved.

Second, Richard obviously cannot assert this claim against Steven because the grantor of a trust does not have a legal duty of disclosure to trust beneficiaries.[7] *Mercurio v. Huntington Nat'l Bank*, 347 Mich. App. 662, 681-82 (2023) (silent fraud claim requires legal or equitable duty of disclosure).

Third, Richard is not a real party in interest. He admits that his only basis to assert this claim is as a trust beneficiary. (Am. Countercl. ¶¶14, 142.) The Court may take judicial notice of his pleadings in Macomb County Probate Court—not to save this count, but as an additional basis to dismiss it. *Lyons, supra* at 333. In Macomb County, Richard alleges the trusts "own a percentage of the various Mancini family businesses" and that "the profits from these businesses are collectively siphoned into bank accounts titled to Steven, Lisa, and Ric-Man Construction." See e.g. **Ex. A4**, ¶¶21-23. Any claim that properties partially owned by the trusts made improper distributions is a claim of the Trustee—not of a beneficiary. See Fed. R. Civ. P. 17(a) ("[a]n action must be prosecuted in the name of the real party in interest.") See *In re Beatrice Rottenberg Living*

---

[7] The duty to keep beneficiaries informed about trust administration is imposed exclusively on the trustee by the Michigan Trust Code, M.C.L. § 700.7814.

*Tr.*, 300 Mich. App. 339, 356–57 (2013) (rejecting claim by trust beneficiary that his sister was personally liable for loans made by their father during his lifetime because any claim related to that issue belonged to the trustee of the father's trust).[8]

Of course, Richard knows this. That is why he already filed breach of trust claims in Probate Court. The only mystery is why, after having been admonished by Judge Harrison for litigating his breach of trust claims in Florida, Richard has now decided to try to litigate his breach of trust claims in this Court. This claim is an abuse of process and should be dismissed for any or all of the above reasons.

## CONCLUSION

For all of the foregoing reasons, Counter-Defendants ask this Court to dismiss the amended counterclaim in its entirety with prejudice.

June 23, 2026                                    Respectfully submitted,

*/s/ Joseph E. Viviano*
Joseph E. Viviano (P60378)
KIENBAUM HARDY
VIVIANO PELTON & FORREST, P.L.C.
*Attorneys for Plaintiff/Counter-Defendants*

---

[8] The *Rottenberg* Court explained: "It is the duty of the trustee to administer the trust for the benefit of the beneficiaries, MCL 700.7801, to control and protect the property of the trust, MCL 700.7810, to enforce any claims of the trust, MCL 700.7812, and to marshal and collect outstanding trust property, MCL 700.7813(1). There can be no doubt that the trustee of the ENR Trust is the party who actually owns the claims asserted by [the beneficiary] in this matter. Because [the beneficiary] was not the real party in interest, his claims should have been dismissed." *Id.*, 356.

## LOCAL RULE CERTIFICATION

I, Joseph E. Viviano, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

*/s/Joseph E. Viviano*
Joseph E. Viviano (P60378)
Kienbaum Hardy
Viviano Pelton & Forrest, P.L.C.
12900 Hall Road, Suite 190
Sterling Heights, MI 48313
(586) 469-1580
jviviano@khvpf.com

June 23, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on June 23, 2026, I electronically filed the foregoing document and all attachments with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants on record.

/s/ Catherine A. Schmitt
Catherine A. Schmitt, Legal Assistant
4898-8252-1527, v. 3